RALSTON PURINA COMPANY, Respondent, v. TOYCEN MOTORS and another, Appellants.

*October 2—October 29, 1963.*

For the appellants there was a brief and oral argument by *Robert W. Dernbach* of Eau Claire.

For the respondent there was a brief by *Ramsdell, King, Carroll & Barland* of Eau Claire, and oral argument by *George Y. King.*

BROWN, C. J. The issues presented by the appeal are:

(1) Whether substantial issues of fact exist requiring a trial.

(2) Whether respondent has a right to cross-examine witnesses as a basis for defeating the motion for summary judgment.

### (1) *Substantial Issues of Fact.*

The basic question relating to the defense of the present action is whether Toycen Motors, or GMAC, its assignee, acquired title to, or a valid interest in, the poultry racks superior to that of the chattel mortgage executed by the Unterschuetz corporation to Ralston. Consequently, the title to the poultry racks involved in a series of transactions must be traced in order to determine whether any substantial issues of fact remain requiring a trial.

From the record, it shows that the Scheels Truck Body constructed the racks for the Unterschuetz corporation. When the trucks arrived at Toycen Motors, they were brought to Scheels Truck Body where the racks were attached. At this time, the title to the racks could have passed to the trucks under the law of accession, if the proper facts existed. By this doctrine, when goods of two different owners are incorporated together, the title to the resulting product goes to the owner of the principal goods. Brown, Personal Property (2d ed.), p. 54, sec. 25. The general rule is that the doctrine does not apply when the attached article can be separated from the principal property without damage to the latter. This rule, however, is subject to terms of any agreement, specific intention of the parties, and certain specific rules which are recognized in certain factual circumstances. *Brown, supra,* page 55. The controlling factor is the intention of the parties whenever that can be ascertained. For general discussions of the doctrine and its application, see 7 Blashfield, Cyc. Automobile Law and Practice (perm. ed.), p. 462, sec. 4574; 1 Am. Jur. (2d), Accession and Confusion, pp. 276–278, secs. 6–8; Anno. 43 A. L. R. (2d)

813. Toycen Motors which had title to the trucks could have obtained title to the poultry racks when they were attached to the trucks. However, the record does not show whether the racks could be severed without injury to the trucks. Nor does it show whether there was any specific intention of the parties. Therefore, reasonable doubts arise as to whether the title of the racks passed to the trucks, or whether the Unterschuetz corporation, which apparently had title to the racks, intended to retain title when they were attached to the trucks.

Later the trucks were sold by Toycen Motors to Siegfried Unterschuetz. The conditional sale contracts listed the poultry racks as part of the property included in the conditional sale. In the absence of a provision expressly covering accessories to motor vehicles, property which can be detached without injury is not considered included in the terms of a conditional sale contract. See Lee, Accessories Attached to Automobiles Sold Under Title-Retaining Instruments, 19 Temple Law Quarterly (1945), 89, 99. Siegfried Unterschuetz by his affidavit in support of the motion for summary judgment attempted to explain the reason for listing the poultry racks:

"That attached to each of the foregoing motor vehicles were poultry racks which had been contracted for from Scheels Truck Body of Hillsdale, Wisconsin, and that said conditional sales contracts so executed by affiant made reference to the poultry racks attached to said motor vehicles.

"That each of said three motor vehicles were purchased by affiant for use in connection with the business affairs and activities of S. Unterschuetz and Sons, Inc. who was then engaged in the business of poultry processing at Chetek, Wisconsin.

"That said motor vehicles and poultry racks thereto attached were units necessary in the operation of the day to day business activities of S. Unterschuetz and Sons, Inc. and Toycen Motors were given the security of the poultry

racks even though they were supplied by Scheels Truck Body of Hillsdale, Wisconsin, as said poultry racks were attached to the motor vehicle units."

LaVerne Toycen, partner of Toycen Motors, also attempted to explain in his affidavit the reason for including the poultry racks in the conditional sale contracts:

"3. That although said trucks were purchased for the use of S. Unterschuetz & Sons, Inc., for financial reasons the said Siegfried O. Unterschuetz purchased the same in his own name; and that because the down payment made by the said Siegfried O. Unterschuetz was low, affiant requested additional security because the trucks would depreciate in value in a greater proportion than the contracts would be paid.

"4. That in accordance with said request, the said Siegfried O. Unterschuetz agreed to the listing on each contract of conditional sale a poultry rack which had been purchased from Scheels Truck Body of Hillsdale, Wisconsin; and that said poultry racks were immediately attached to said trucks upon the delivery thereof, and said trucks and poultry racks as a unit were used in the business of S. Unterschuetz & Sons, Inc."

The affidavits do not show the intention of the parties with respect to what type of security was to be given. It is evident that conflicting inferences from these affidavits can reasonably be drawn. One is that the intention of the parties was that title to the poultry racks was retained by the Unterschuetz corporation and that Siegfried Unterschuetz, acting on behalf of the corporation, agreed to give Toycen Motors a lien, or other interest, albeit unrecorded, to Toycen Motors. The other inference is that the parties intended that the title to the poultry racks was to pass to Toycen Motors under the conditional sale contracts.

The affidavit of the attorney for respondent challenged the authority of Siegfried Unterschuetz to bind the Unterschuetz corporation. Appellants did not submit a counteraffidavit

showing that Siegfried Unterschuetz had the requisite authority in this regard.

These doubts and conflicting inferences are not resolved by subsequent transactions. The Transfer of Equity Agreements entered into between Siegfried Unterschuetz and the Unterschuetz corporation did not mention the poultry racks as part of the equity transferred. Conflicting inferences, again, can be drawn: If the poultry racks were part of the trucks there was no necessity to list them; if the Unterschuetz corporation had retained title to them, the Transfer of Equity Agreements did not apply.

The Transfer of Equity Agreements although entered into about a week before Ralston became interested in the financial affairs of the Unterschuetz corporation were not filed until about nine months later. The conditional sale contracts were duly filed and were of public record to subsequent creditors. However, ambiguity exists as to the poultry racks listed on them. By his affidavit, Siegfried Unterschuetz states:

"That at or prior to the execution of the chattel mortgages by S. Unterschuetz and Sons, Inc. in favor of Ralston Purina Company the duly authorized representatives, agents and employees of Ralston Purina Company knew, based upon verbal conversation with affiant, or upon their examination of the books and records of S. Unterschuetz and Sons, Inc., that said motor vehicles and poultry racks were being purchased from Toycen Motors pursuant to a title retention contract which had been assigned by Toycen Motors to General Motors Acceptance Corporation."

Whether the employees or agents of Ralston had knowledge or had reason to know that the poultry racks were previously incumbered either by accession or by a security arrangement bears to their good faith in contending it obtained a superior right to that of Toycen Motors or GMAC. To state that Ralston, through its agent or employees, had

such knowledge by verbal conversations or by examination of the books without giving evidentiary facts relating the conversations or examinations under the circumstances are mere conclusions of law.

Appellants have made a strong case for being granted summary judgment. The affidavits in support of the motion set forth certain evidentiary facts surrounding the transactions involving the title to the poultry racks. However, they fail to reveal the necessary evidentiary facts directly relating to the material issues of the detachability of the poultry racks, and the specific intention of the parties in their respective transactions. *Home Savings Bank v. Bentley* (1958), 5 Wis. (2d) 19, 23, 92 N. W. (2d) 377. The doubts and conflicting inferences arising from the record which shroud these material issues are sufficient to defeat the motion. *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 277, 103 N. W. (2d) 9.

The affidavit that Ralston's employees and agents had knowledge of the superiority of GMAC's interest is based on conclusions. It does not set forth evidentiary facts which are sufficient to establish a defense in the present case for appellants to prevail on summary judgment. *Stevenson v. Barwineck* (1959), 8 Wis. (2d) 557, 560, 99 N. W. (2d) 690.

Therefore, substantial issues of fact still remain in the case, and it was proper for the court to deny the motion for summary judgment.

(2) *Right to Cross-Examine.*

Respondent contends as another ground for denying the motion for summary judgment that under the circumstances of this case it is entitled to the right of cross-examining certain persons. This contention is rendered immaterial in view of our holding that the motion was properly denied.

*By the Court.*—Order affirmed.