IDS LEASING CORPORATION,
Appellant,

v.

LEASING ASSOCIATES, INC., Appellee.

No. 17500.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 25, 1979.

Rehearing Denied Nov. 21, 1979.

Woodburn & Sullivan, G. Dennis Sullivan, Richard R. Hayslett, William C. Woodburn, Dallas, for appellant.

Hicks, Hirsch, Glover & Cochran, Arthur M. Glover, Jr., John H. Glover, Houston, for appellee.

DOYLE, Justice.

IDS Leasing Corporation (IDS) brings this appeal from a judgment determining that as between two secured creditors, Leasing Associates, Inc. (Associates) held a superior interest in and to a third party's trucking equipment and was entitled to the $17,500 proceeds from its sale. The trial court found that the affixing of refrigerator units to truck trailers constituted an accession under Sec. 9.314 of the Texas Uniform Commercial Code (UCC) and that Associates' security interests was paramount to that of IDS by virtue of Sec. 9.314(c)(1) of the UCC and the Texas Certificate of Title Act. We reverse and render.

IDS and Associates were in the business of financing equipment purchases and taking as collateral a security interest in equipment owned by their customers. In this suit they dealt with a mutual third party named J. W. Allen. Mr. Allen and his two sons owned several trucking companies known as J. W. Allen Properties, J. W. A., Ltd. and J. W. Allen Properties, Inc.

In 1971, Associates and J. W. Allen Properties, Inc. entered into a master agreement for the lease-purchase of various trucks to be acquired over a period of time. In 1972, J. W. A., Ltd. entered into a contract with Convoy Service Company to purchase nine refrigerator units designed for installation on truck trailers. As part of this transaction, Convoy took a purchase money security interest in the refrigerator units and subsequently assigned this interest to IDS, which arranged the financing for the purchase. IDS perfected its security interest by timely filing the financing statement in the Office of the Secretary of State of Texas. Thereafter, the Allens installed these refrigerator units on various truck trailers belonging to them and others.

In 1974, J. W. Allen Properties, Inc. defaulted on some of the terms of the master-lease agreement executed in 1971. In an effort to avoid a complete default, appellee reworked its contract and advanced additional funds to the corporation. As consideration for the reworking of its contract and the additional funds, J. W. Allen Properties, Inc. gave two promissory notes to appellee. Both notes were secured by an interest in certain tractor trailers together with all additions and accessions thereto. Only five trailers are involved in this suit. They are registered in the name of J. W. Allen.

Prior to offering the reworked contract, appellee did a UCC check and found that there were no liens against J. W. Allen Properties, Inc. or J. W. Allen. Appellee procured the titles to the tractor trailers so they could be certain there were no liens against them and so they could register their liens in accordance with the Texas Certificate of Title Act, art. 6687–1, V.A. C.S. Signing of the reworked contract took place in Fort Worth, at which time appellee's representative was tendered title to the trucks. Upon tender, appellee's representative noted that none of the truck titles were in the name of J. W. Allen Properties, Inc., but that five were in the name of J. W. Allen and one was in J. W. A., Ltd. Before closing the deal appellee did not run another UCC check on the names of the owners of the trailers to ascertain if there were liens. Appellee's witness, Mr. French, testified that he knew at the closing that he had a problem with the titles to the trailers before he disbursed the funds. Nevertheless, in order to save the refinancing deal, appellee closed the transaction, taking a security agreement purporting to give a security interest in the trailers. The security agreement was signed only by J. W. Allen Properties, Inc., which was not the owner of the trailers. The promissory notes were signed by J. W. Allen Properties, Inc., J. W. Allen and his two sons, individually. None of the documents was signed by J. W. A., Ltd.

The Allens subsequently defaulted on the reworked contract and both parties claimed title to the refrigerator units. Appellant instituted this suit asserting that under the terms of the security agreement and the note, it has acquired title to the trailers and all accessions thereto. Before suit was filed, the parties agreed to sell the trailers with refrigerators attached and to put the

agreed value of the refrigerator units in a Houston bank pending the outcome of this suit.

Trial was to the court without a jury and appellee was awarded the proceeds in escrow. Findings of fact and conclusions of law were requested and filed. Additional and amended findings of fact were also requested but were refused by the court. Appellant alleges 22 points of error.

In points of error 1, 8 and 10, appellant argues the trial court erred in conclusions of law number 1 and number 6 which are as follows:

1. That the affixing of the Thermo King refrigerator units to the trailers constituted an accession to the trailers as defined by Section 9.314 of the Texas Uniform Commercial Code.

6. That under section 9.312(c)(1) Leasing Associates, Inc., is the subsequent purchaser for value as defined in Section 1.201(33) and Section 1.201(32) of the Texas Uniform Commercial Code and therefore Section 9.314(a) of the Texas Uniform Commercial Code does not grant IDS Leasing Corporation a priority security interest to the refrigeration units.

 As a term of legal classification, accession is generally employed to signify acquisition of title to personal property by its conversion into an entirely different thing by labor bestowed on it or by its incorporation into a union with other property. 1 Am.Jur.2d Accession § 2 (1962); 1 Tex.Jur.2d Accession § 1 (1959). As a general rule where accessories are sold or furnished without effort on the part of the vendor to retain title, the accessories are permitted to pass with the chattel. 43 A.L.R.2d 819; 1 Am.Jur.2d Accession § 7 (1962); *Texas Hydraulic & Equipment Company, Inc. v. Associates Discount Corporation*, 414 S.W.2d 199 (Tex.Civ.App.—Austin 1967, no writ). Where accessories and attachments that have been placed on an automobile can be easily identified and removed, they do not become a part of the automobile by accession. 1 Tex.Jur.2d Accession § 1 (1959); *Firestone Service Stores v. Darden*,

96 S.W.2d 316 (Tex.Civ.App.—San Antonio 1936, no writ).

 At the time of the sale of the refrigerator units in this suit, a purchase money security interest in them was retained. It was subsequently assigned to appellant, who duly perfected his interest by timely filing his financing statement. Appellant never intended that these units be acceded to anyone's trucks or trailers. The evidence showed these units had individual serial numbers and a name different from that of the trailer manufacturer. Further, there was testimony that while holes had been cut in these trucks to install the refrigerators and that extra iron supports had to be installed in the trucks to accommodate the refrigerators, one could be removed from a truck in approximately 3 hours, and that the holes in the trucks actually increased the value in that it would be more expensive to have the hole cut out than to close the hole. We find that the refrigerator units were not accessions and sustain appellant's point of error number 1.

However, even if these units were considered as accessions, appellant's perfected security interest would prevail pursuant to section 9.314, Tex.Bus. & Com.Code Ann. (Vernon 1973).

Appellee argues that his lien priority arises by virtue of article 9.314, subsection (c)(1) of the UCC, which is an exception to article 9.314(a). Appellee does not dispute that article 9.314(a) would give appellant a priority interest in the units in question but for the exception in 9.314(c)(1). Appellee claims, in effect, that all it needs to show is that it is "(1) a subsequent purchaser for value of any interest in the whole . ."

 Texas adopted verbatim UCC article 9.314 as it was drafted under the sponsorship of the American Law Institute and National Conference of Commissioners on Uniform State Laws, but Texas uses a point (.) rather than a dash (–) between numbers and interchanges letters with numbers in the sections and subsections. While the wording is identical, the organizing of the

National Code and Texas Code are different in the relevant portions, Sections 1–3 and a–c. The National Code Sec. 9–314 reads:

UCC § 9–314. Accessions.

(1) A security interest in goods which attaches before they are installed in or affixed to other goods takes priority as to the goods installed or affixed (called in this section "accessions") over the claims of all persons to the whole except as stated in subsection (3) and subject to Section 9–314(1).

(2) A security interest which attaches to goods after they become part of a whole is valid against all persons subsequently acquiring interest in the whole except as stated in subsection (3) but is invalid against any person with an interest in the whole at the time the security interest attaches to the goods who has not in writing consented to the security interest or disclaimed an interest in the goods as part of the whole.

(3) The security interests described in subsections (1) and (2) do not take priority over

(a) a subsequent purchaser for value of any interest in the whole; or

(b) a creditor with a lien on the whole subsequently obtained by judicial proceedings; or

(c) a creditor with a prior perfected security interest in the whole to the extent that he makes subsequent advances

*if the subsequent* purchase is made, the lien by judicial proceedings obtained or the subsequent advance under the prior perfected security interest is made or contracted for without knowledge of the security interest and before it is perfected. A purchaser of the whole at a foreclosure sale other than the holder of a perfected security interest purchasing at his own foreclosure sale is a subsequent purchaser within this section. (Emphasis supplied).

The Texas Code Sec. 9.314 reads:

§ 9.314. Accessions

(a) A security interest in goods which attaches before they are installed in or affixed to other goods takes priority as to the goods installed or affixed (called in this section "accessions") over the claims of all persons to the whole except as stated in Subsection (c) and subject to Section 9.315(a).

(b) A security interest which attaches to goods after they become part of a whole is valid against all persons subsequently acquiring interests in the whole except as stated in Subsection (c) but is invalid against any person with an interest in the whole at the time the security interest attaches to the goods who has not in writing consented to the security interest or disclaimed in interest in the goods as part of the whole.

(c) The security interests described in Subsections (a) and (b) do not take priority over

(1) a subsequent purchaser for value of any interest in the whole; or

(2) a creditor with a lien on the whole subsequently obtained by judicial proceedings; or

(3) a creditor with a prior perfected security interest in the whole to the extent that he makes subsequent advances *if the subsequent* purchase is made, the lien by judicial proceedings obtained or the subsequent advance under the prior perfected security interest is made or contracted for *without knowledge of the security interest and before it is perfected.* A purchaser of the whole at a foreclosure sale other than the holder of a perfected security interest purchasing at his own foreclosure sale is a subsequent purchaser within this section.

The paragraph in question in the Texas UCC is at Sec. (c)(3) where (3) ends with "advances". In the National Code the next wording, "if the subsequent . . ." *begins another paragraph.* (Emphasis supplied) In the Texas Code the wording, "if the subsequent . . ." follows "advances" in the subsection (3) and thus appears to be a continuing part of (3). A reading of the paragraph beginning with "if the subsequent . . ." clearly shows

that it has reference to the preceding subsection, (1), (2) and (3) of Sec. (c). We interpret "if the subsequent purchase is made," to refer directly to (1); "the lien by judicial proceeding obtained," to refer to (2); and "the subsequent advance under the prior perfected security interest," to refer to (3). The remainder of the questioned paragraph fixes the requirements for qualifying for an exception under subsections (1), (2) and (3). It is clear that appellee must not only prove that it is a subsequent purchaser for value of any interest in the whole, but that it perfected its security interest without knowledge of appellant's security interest and before it was perfected. The record before us shows that appellant filed its UCC–1 with the Secretary of State on January 5, 1973, within ten days from the date of purchase of the refrigerator units, thus perfecting its lien. The purchase by appellee was not made until March 21, 1974. The very purpose of drafting article 9.314 as stated in the code comment was

> 1. To state when a secured party claiming an interest in goods installed in or affixed to other goods is entitled to priority over a party with a security interest in the whole.
> 2. This section changes prior law in that the secured party claiming an interest in a part (e. g., a new motor in an old car) is entitled to priority and has a right to remove even though under other rules of law the part now belongs to the whole

. . .

Appellee contends that under article 9.314(c)(1) it has to show only that it is "a subsequent purchaser for value of any interest in the whole," unaffected by any of the restrictions imposed by the paragraph following (c)(3). If this contention were valid, no prior perfected interest could ever prevail against a subsequent purchaser for value of any interest in the whole, and the declared purpose of article 9.314 would be defeated. We have been unable to find any Texas case interpreting Sec. 9.314, nor has either party cited any such case. However, the Tennessee case of *Mills-Morris Automotive v. Baskin*, 224 Tenn. 697, 462 S.W.2d

486 (1971), is in point in every particular. In that case the plaintiff installed a wrecker bed on a truck chassis owned by a third party. On the same date, plaintiff recorded his financing statement showing its security interest with the Secretary of State, but no lien notation was made with the title division upon the title certificate of the truck on which the equipment was installed. Later the third party sold the truck with wrecker attached to the defendant, delivering to him a certificate of title which contained no notation of plaintiff's lien. The defendant had no notice that plaintiff was claiming any interest in the wrecker attached to the truck. The Tennessee Supreme Court, citing its Sec. 47–9–314, Tenn. Code Ann., which carries the identical wording as our UCC 9.314, stated that:

> In the case before us the wrecker body, though acquired by an innocent purchaser, was acquired after the date on which the financing statement was filed in the office of the Secretary of State. . . .

\* \* \* \* \* \*

> The wrecker did not become an accession to or an integral part of the truck and it was not necessary for the plaintiff to file a notice of the lien with the Title Division of the Department of Revenue in order to protect its lien. It is our opinion, therefore, that since the lien of the plaintiff was perfected before the sale of the truck to the defendant the lien has priority over the title that the defendant acquired by his purchase.

We sustain appellant's points of error 8 and 10.

Having found that the refrigerator units were not accessions, we do not deem it necessary to discuss appellant's points of error 3 and 13 except to point out that the Texas Supreme Court has held that the UCC and Certificate of Title Act are in pari materia and must be construed together. *Associates Discount Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d 546, 549 (Tex.1970). When the personal property is not a motor vehicle subject to the Certificate of Title Act, the UCC must be complied with and

will control in case of any conflicts with the Title Act. UCC Sec. 9.302(a); Article 6687-1, Sec. 65, Certificate of Title Act. We do not find it necessary to rule on appellants' other points of error.

The judgment of the trial court is reversed and judgment is rendered for appellant, IDS Leasing Corporation, along with the award of all funds on deposit at Southern National Bank in account no. 034-380 in the amount of $17,500, together with any interest that may have accrued thereon.

COLEMAN, C. J., and WALLACE, J., also sitting.