In re John Kenneth LYFORD, Sr., Debtor.

GENERAL MOTORS ACCEPTANCE CORP., Plaintiff,

v.

John Kenneth LYFORD, Sr., Harvey J. Putterbaugh, Trustee, Defendants.

Bankruptcy No. 181–00302.

Adv. No. 182–0015.

United States Bankruptcy Court, D. Maine.

July 20, 1982.

Donald A. Kopp, Jensen, Baird, Gardner & Henry, Portland, Me., Robert E. Sutcliffe, Rudman & Winchell, Bangor, Me., for plaintiff.

Robert S. Lingley, Dover-Foxcroft, Me., for Lyford.

Harvey J. Putterbaugh, Portland, Me., for trustee.

1. Only the plaintiff has filed a brief.

The parties stipulated to the extent and validity of the security interests, but disputed

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

The plaintiff, General Motors Acceptance Corporation, has filed a Complaint for Relief from Stay. The trustee filed a counterclaim seeking to determine the extent, validity, and perfection of the security interests claimed by the plaintiff in two trucks. The parties stipulated to certain undisputed facts, a trial was held, and the parties were given time to file briefs.[1] The court finds the following facts:

On June 30, 1980, the debtor signed a security agreement with the vendor, which was assigned to plaintiff, granting a security interest in a new 1980 GMC truck, including a new Husky Loader and a Turner Tag Axle. On September 30, 1980, the debtor signed a security agreement with vendor, also assigned to plaintiff, granting a security interest in a used 1977 GMC truck, including a used 1977 Husky Loader, a new Motor Truck & Trailer Pulp Body, a new Tag Axle and a new USG Jake Brake. Each security interest secures an installment sales contract under which the debtor is in default. On the date of filing, September 18, 1981, the debtor owed $65,317.14 on the 1980 truck and $39,571.89 on the 1977 truck.

The plaintiff is identified as the holder of a first lien on the certificate of title for each of the two trucks, and has a perfected security interest in both vehicles pursuant to Me.Rev.Stat.Ann. tit. 29, §§ 2401 *et seq.* No financing statements concerning the trucks have been filed with the Secretary of State.

The two trucks in question are designed for the logging industry. They consist of a basic cab and chassis unit constructed by GMC, to which were added components specially ordered by the customer, and installed by the vendor. The body is bolted to the chassis by six to eight tie-down U-clamps. It would take two men one day to drill, bolt and align the body to the chassis.

whether the interests had been properly perfected.

A tag axle is an air-operated third axle bolted to the rear of the chassis. It increases the truck's load capacity, and is equipped with an additional set of brakes. Installation would take two men one and a half days.

A Husky loader is a hydraulic boom and grapple which is used to pick up logs and load them on the truck. It is bolted to the frame, and requires a variable speed governor be connected to the engine. Installation would take one and a half days.

A jake brake is factory-installed in the engine by removing and replacing the engine valve covers. The two trucks were fully assembled by vendor prior to delivery to the debtor.

These components permit the trucks to be used as logging trucks. For example, the tag axle and jake brake allow heavy loads to be handled. The loaders give the truck the capacity to load logs onto itself without the need for a separate loading machine.

The 1980 truck, loader and tag axle are worth at most $55,000, assuming they were reassembled and refurbished. The value of the repaired and refurbished 1977 truck, loader, pulp body, tag axle and jake brake would not exceed $35,000.

■ The trustee contends that the plaintiff's perfected security interest extends only to the trucks' basic cab and chassis units. He argues that a proper certificate of title can perfect a security interest only in a "vehicle," and that the definition of vehicle encompasses only the cab and chassis unit. *See* Me.Rev.Stat.Ann. tit. 29, §§ 1(20), 2351(10), 2402. Even assuming, without deciding, that the definition of "vehicle" does encompass only the cab and chassis, the court finds that the components in question are accessions, and, therefore, the plaintiff's security interests therein were properly perfected.

■ There is little case law in Maine defining accessions: none decided since Maine adopted the Uniform Commercial Code, Me.Rev.Stat.Ann. tit. 11, §§ 1–101 *et*

*seq.* The UCC defines "accessions" as goods "installed in or affixed to other goods." *Id.,* § 9–314(1) (1964). However, "the Code does not indicate the degree to which one chattel must be affixed to another in order to constitute an accession." *Mixon v. Georgia Bank & Trust Co.,* 154 Ga.App. 32, 33, 267 S.E.2d 483, 484 (1980).[2] UCC Comment 2 gives some guidance in stating that section 9–314 "adopts the same policy as that stated in Section 9–313 for fixtures." Uniform Commercial Code Comment 2 to UCC § 9–314, *reprinted in* Me. Rev.Stat.Ann. tit. 11, § 9–314 at 350–51 (1964). The factors looked to by Maine courts in determining whether any personalty has become part of the realty upon which it rests, (*i.e.,* whether it has become a fixture) are whether:

(1) [the personalty] is physically annexed, at least by juxtaposition, to the realty or some appurtenance thereof, (2) it is adapted to the use to which the land to which it is annexed is put, or the chattel and the real estate are united in the prosecution of a common enterprise, and (3) it was so annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty, . . . which intention is not the hidden intention of the party making the annexation, but the intention which the law deduces from such external facts as the structure and mode of attachment, the purpose and use for which the annexation has been made and the relation and use of the party making it.

*Sutton v. Frost,* 432 A.2d 1311, 1314 n. 4 (Me.1981); *Boothbay Harbor Condominiums, Inc. v. Department of Transportation,* 382 A.2d 848, 854 (Me.1978). "Special prominence is given to the third factor." *Sutton,* 432 A.2d at 1314 n. 4; *Hartford National Bank & Trust Co. v. Harvey,* 420 A.2d 230, 235 (Me.1980). These same factors are pertinent in determining whether a chattel has become an accession. *See* Nickles, *Accessions and Accessories Under Pre-Code Law and U.C.C. Article 9,* 35 Ark.L. Rev. 111, 127 n.37 (1981). Prior Maine case

**2.** 28 UCC Rep. 827, 829.

law has examined whether one chattel is "united to the materials of another," and whether the combined materials form "a joint product". *Pulcifer v. Page*, 32 Me. 404, 405 (1851); *see Eaton v. Munroe*, 52 Me. 63, 64 (1862). It has been elsewhere recognized that the controlling factor is the intention of the parties. *Ralston Purina Co. v. Toycen Motors*, 21 Wis.2d 206, 210, 124 N.W.2d 24, 27 (1963); *see Omaha Standard, Inc. v. Nissen*, 187 N.W.2d 721, 724 (Iowa 1971).

■ Here, the evidence shows that all the components in question were attached to the cab and chassis unit. While it is true that certain components are merely bolted, not welded, to the chassis, the evidence does show that their removal would not be an insignificant task, taking two men a full day or more to do so.[3]

The components and the chassis unit clearly are united in the prosecution of a common enterprise. Evidence showed that the components were useful and necessary for the operation of the trucks as logging trucks. The chassis and cab unit is specially built to be durable, and to accommodate the components.

■ Finally, the external facts show that the annexations were made with the intention that they be permanent.[4] The components were annexed before delivery of the trucks to the debtor, and the debtor purchased the completed units from a single seller, granting it a security interest in the assembled units. Thus, should the seller ever foreclose upon its security interest, it would not have to remove the components from the truck, since it would be entitled to the entire unit.[5] In addition, as discussed above, the components can not easily be detached from the chassis. Finally, the components and chassis were all specially ordered by the debtor, expressly to fulfill his stated intention that the completed trucks be suitable for special logging work. The components in question, in fact, are essential to the truck's continued operation as logging trucks. In light of these facts, the court concludes that the components are

---

**3.** The court does not find from the evidence before it that the components could not be removed without damaging the chassis unit. In examining how the goods in question are physically annexed, it is appropriate to consider whether they can be physically separated without damage to the principal property. *See Ralston Purina Co. v. Toycen Motors*, 21 Wis.2d 206, 210, 124 N.W.2d 24, 27 (1963). It has been stated, however, that a claim of title by accession may be defeated by showing only that the materials can be identified and severed without injury to the original property. *See* 1 Am.Jur.2d, *Accession and Confusion*, § 2 (1962). A similar preoccupation with the physical character of the annexation of a chattel to realty once pervaded the field of fixtures. That test has been discarded in favor of the three-factor test quoted in the text, with special emphasis being given to the intention of the parties. *See Hayford v. Wentworth*, 97 Me. 347, 350, 54 A. 940, 944 (1903); *Readfield Telephone and Telegraph Co. v. Cyr*, 95 Me. 287, 289, 49 A. 1047, 1050 (1901). It is now recognized that the value in examining whether personalty can be removed without causing material injury to the estate "is its bearing on the question of intention—it is unlikely that the parties would have intended for the removal of additions where removal would materially damage the remaining estate." *Sutton v. Frost*, 432 A.2d 1311, 1314 (Me.1981) (footnote omitted). The UCC recognizes also that the factor of damage

upon severance is not controlling. See Me.Rev. Stat.Ann. tit. 11, § 9–314(4). The court finds that a similar analysis in the field of accessions is appropriate. *See Ralston Purina Co.*, 21 Wis.2d at 210, 124 N.W.2d at 27. Thus, while certain components may here be severable without injury to the chassis, that factor is outweighed by the other evidence discussed in text.

**4.** The focus here is upon the annexor's *intention*—did the annexor intend the accession to be permanent? While the mode of attachment is one factor relevant to this inquiry, it is not the sole factor. Thus, a chattel which, in fact, could be readily severed from another chattel might still have been annexed with the intent that it be a permanent accession. Compare *In re Ladd*, 21 B.R. 579, 581 (Bkrtcy.D.Me.1982). There, to determine whether a manufactured housing unit was on a permanent chassis, the court looked not to any party's intentions, but solely at the structure and mode of attachment.

**5.** Compare the intentions of a seller of components only who annexes them to a cab and chassis unit, and retains a security interest therein. Should he ever foreclose, he would expect to remove the components. Thus, it is less likely that he intended the annexation to be permanent.

accessions. *See Texas Hydraulic & Equipment Co., Inc. v. Associates Discount Corp.,* 414 S.W.2d 199, 201 (Tex.Civ.App.1967).

 Compliance with Me.Rev.Stat. Ann. tit. 29, § 2402 is necessary to perfect a security interest in a vehicle. *Id.* § 2407; Me.Rev.Stat.Ann. tit. 11, § 9–302(3)(b) (Supp.1981–82). Security interests in accessions to a vehicle are perfected in the same manner.[6] *See Wooden v. Michigan State Bank,* 117 Ga.App. 852, 854, 162 S.E.2d 222, 223, (1968).[7] It is undisputed that the plaintiff complied with section 2402. Therefore, the court finds that the plaintiff's security interests were properly perfected.[8]

The value of the 1980 truck loader and tag axle does not exceed $55,000, while the value of the 1977 truck, loader, pulp body, tag axle and jake brake does not exceed $35,000. The amount owed by the debtor on each truck exceeds its value. Finding no equity in the property for the debtor in this Chapter 7 proceeding, the court grants relief from stay. *See* 11 U.S.C. § 362(d).

Enter Order.

---

**6.** Me.Rev.Stat.Ann. tit. 29, §§ 2402 and 2407 are part of the Maine Motor Vehicle Certificate of Title and Anti-theft Act, which is based upon the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act. The purposes of the Uniform Act include:

 1. To facilitate vehicle sales and sales financing by simplifying proceedure for transfers and the creation *and perfection of liens*;

 . . . . .

 5. To furnish convenient evidence of vehicle ownership *and lien status* and so to make easier ... their use as collateral for lower cost loans for emergency needs; ....

11 U.L.A. 421 (1974) (Commissioners' Prefatory Note) (emphasis added). Perfection of security interests in vehicle accessions by notation on the vehicle's certificate of title furthers these goals. Were the court to rule otherwise, it would become necessary in many loan transactions to search the Secretary of State's records to see if vehicle accessions are encumbered in addition to checking the vehicle's certificate of title.

**7.** 5 U.C.C.Rep. 634, 636.

**8.** Pursuant to Me.Rev.Stat.Ann. tit. 11, § 9–314, the plaintiff's security interest in the accessions has priority over the trustee's interest, since plaintiff's interests were perfected prior to the time the trustee acquired any interest. *Id.* § 9–314(3)(c); *see* 1 B *Bender's UCC Service* § 10.03[6] (1982) ("security interest in accessions, whether it attaches before or after the goods involved become part of the whole, is valid against the trustee in bankruptcy of the owner of the whole if the interest is perfected before bankruptcy.")