**MACK'S USED CARS & PARTS, INC.,** Plaintiff-Appellee,

v.

**TENNESSEE TRUCK & EQUIPMENT CO., Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

March 14, 1985.

Permission to Appeal Denied by Supreme Court May 6, 1985.

James R. Moore, with Gilreath & Associates, Knoxville, for defendant-appellant.

Robert N. Goddard, Maryville, for plaintiff-appellee.

## OPINION

SANDERS, Judge.

This case originated in the General Sessions Court when the Plaintiff-Appellee, Mack's Used Cars & Parts, Inc., brought suit against the Defendant-Appellant, Tennessee Truck & Equipment Co., for possession of a 1975 model GMC one-ton truck with a 1979 Atlas wrecker assembly attached thereto. Prior to the filing of the suit, the defendant had removed the wrecker assembly from the truck chassis. It did not contest the plaintiff's right to possession of the truck but contested its right to possession of the wrecker assembly on the theory that perfection of a lien on the title of the truck did not extend to the wrecker assembly. The defendant appealed to the circuit court from an adverse holding in the sessions court and has appealed to this court from an adverse holding in the circuit court.

The facts in the case are not in dispute.

At the time of the purchase, the wrecker assembly was bolted to the frame of the truck, and the hydraulic boom operated off the transmission of the truck. The entire unit was painted in red, white and blue colors. On June 6, 1983, plaintiff sold the vehicle to Jack W. Weaver. As part of this transaction, it took a security interest in the vehicle and perfected its interest by a notation on the truck's title. The plaintiff did not file a separate financing statement (UCC–1) on the wrecker assembly with the office of the Secretary of State. Mr. Weaver later sold the vehicle to a Mr. McCall who sold only the wrecker assembly to the defendant. In making this purchase, the defendant had to remove the wrecker assembly from the GMC truck.

Shortly thereafter, with Mr. Weaver in default, the plaintiff sought to recover possession of the truck and wrecker assembly. The defendant refused to turn over the wrecker assembly.[1] After procuring the property by means of an immediate possession warrant, the plaintiff instituted this suit to be awarded permanent possession of it.

Upon a trial of the case in circuit court, the judge found the plaintiff had properly perfected its security interest in the GMC truck and in the Atlas wrecker assembly. He awarded permanent possession of the property to the plaintiff.

From this decision, the defendant has appealed, alleging the trial court erred in finding the plaintiff had properly perfected its security interest in the wrecker assembly by means of a notation on the truck's title. The appellant directs our attention to *Mills-Morris Automotive v. Baskin*, 224 Tenn. 697, 462 S.W.2d 486 (1971) as support for its position.

In *Mills-Morris*, Mr. Thomas Millington contracted to have the plaintiff install a wrecker bed on a truck chassis which he owned. As part of this transaction, the

---

**1.** Evidently, the defendant also refused to turn over to the plaintiff the GMC truck, which was in its possession as well. The trial court, in its judgment, returned the truck to the plaintiff. The present appeal does not concern possession of the truck.

plaintiff filed a financing statement in the office of the Secretary of State, evidencing its security interest in the property. The plaintiff did not undertake to note its lien upon the vehicle's certificate of title. Later, Millington sold the vehicle, with wrecker bed attached, to the defendant and transferred title. The defendant had no actual knowledge of the plaintiff's lien. Upon subsequent default of Millington, the plaintiff undertook to recover possession of the property covered under its financing statement.

Our Supreme Court, in rendering its decision, relied upon Tenn.Code Ann. § 47–9–314(1), which provides, in part:

A security interest in goods which attaches *before* they are installed in or affixed to other goods takes priority as to the goods installed or affixed (called in this section "accessions") over the claims of all persons to the whole except [not relevant]. . . . (Emphasis ours).

Stating "the lien of the plaintiff was perfected before the sale of the truck to the defendant," the Court held the plaintiff's lien had priority over the title acquired by the defendant in his purchase.

We agree with the position taken by the appellee that the facts in the case at bar are critically different from those in *Mills-Morris.*

In the case at bar, the plaintiff attempted to perfect its security interest in the property as a whole. The "whole" later was disassembled in a sale of a "part" to a subsequent purchaser. The facts of this case do not reveal (as did the facts in *Mills-Morris*) a prior perfected security interest in a "part," which later becomes installed in the "whole." Therefore, Tenn. Code Ann. § 47–9–314 does not apply here, as it did in *Mills-Morris.*

The sole question which must be resolved on this appeal is whether or not the wrecker assembly was an accession to the truck so that the plaintiff's notation of its lien on the vehicle's title established a security interest in the wrecker assembly as well as the truck.

We have discovered minimal case law from this jurisdiction regarding the subject of accessions to motor vehicles. In this regard, we are not guided by the single, conclusionary remark made by the *Mills-Morris* court on "accessions," since the statement was merely dictum. *Id.* at 487. Only a few Tennessee decisions shed any light upon this subject. In *Diamond Service Station v. Broadway Motor Co.,* 158 Tenn. 258, 12 S.W.2d 705 (1929), the court, without discussing the factors upon which it relied in arriving at its conclusion, found two tires, which had been placed upon an automobile, to be accessions to the vehicle. As a result, in an action commenced by the plaintiff to replevy the vehicle from a defaulting third party, the court ruled the party who had sold the tires to the owner of the vehicle and who, in turn, had placed them on its car, had lost its lien on the tires. *See also Free Service Tire Company v. Manufacturers Acceptance Corporation,* 38 Tenn.App. 647, 277 S.W.2d 897 (1954); *Turner v. Superior Tire Service,* 9 Tenn.App. 597 (1929); and *Blackwood Tire & Vulcanizing Company v. Auto Storage Co.,* 133 Tenn. 515, 182 S.W. 576 (1915).

With such scarcity of Tennessee case law on the subject, we believe it beneficial to look to decisions from other jurisdictions for guidance. Initially, we note it has been held the question of whether or not a chattel has become so affixed to other property as to become an accession is one of fact and properly to be determined by the trier of fact. *Mixon v. Georgia Bank & Trust Co.,* 154 Ga.App. 32, 267 S.E.2d 483 (1980).

Under our rules a "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." T.R.A.P. Rule 13(d).

Since individual factual determinations are required in deciding "accession" cases, perhaps it is not surprising to discover an apparently deep division in the results of the decisions. For cases holding the chattel to be an accession, see, e.g., *In re*

*Lyford,* 22 B.R. 222 (Bankr.D.Me.1982) (hydraulic boom and grapple); *Lincoln Bank & Trust Co. v. Netter,* 253 S.W.2d 260 (Ky.1952) (motor block assembly, generator, carburetor, and radiator); *Zandbergen v. Burch,* 33 Or.App. 363, 576 P.2d 812 (1978) (electric winch); *McVay v. McVay,* 318 So.2d 660 (La.App.1975) (tires); *Texas Hydraulic & Equipment, Inc. v. Associates Discount Corp.,* 414 S.W.2d 199 (Tex. Civ.App.1967) (dump body and hoist); and *Matthews v. Couie,* 35 So.2d 794 (La.App. 1948) (automobile motor). For cases holding the chattel not to be an accession, see, e.g., *Rabtoay General Tire Co. v. Colorado Kenworth Corp.,* 135 Colo. 110, 309 P.2d 616 (1957) (tires); *Olive's Store v. Thomas,* 294 P.2d 562 (Okla.1956) (tubes and tires); *Johnson v. Interstate Security Co.,* 152 Kan. 346, 103 P.2d 795 (1940) (detachable truck bed); *Atlas Assurance Co. v. Gibbs,* 121 Conn. 188, 183 A. 690 (1936) (automobile engine); and *Meisel Tire Co. v. Edwards Finance Corp.,* 295 Ill. App. 243, 14 N.E.2d 870 (1938) (tires, tubes, and batteries).

The factors the courts have looked to in determining whether or not a chattel has become an accession of the property to which it is attached differ from case to case, but, in general, they can be listed as follows: (1) whether or not the party affixing the chattel intended for it to be a permanent attachment; (2) the relative ease/difficulty in detaching the affixed property; (3) whether or not the very act of detaching the affixed property would result in damage to the vehicle; (4) the manner and extent to which the property is affixed; and (5) the relationship the affixed property bears to the property to which it is affixed.[2]

*In re Lyford, supra,* not only provides an adequately analogous factual pattern to the case before us, but also clearly and logically enunciates the factors to be considered in "accession" cases.

---

**2.** Often, where there has been a holding that the property is *not* an accession, the court has emphasized an additional factor—the standardization of the part, enabling it to be interchangea-

In *Lyford,* the debtor purchased two trucks, one a 1980 GMC truck, including a Husky Loader and a Turner Tag Axle, the other a 1977 GMC truck, including a Motor Truck and Trailer Pulp Body, a Tag Axle, and a USG Jake Brake. The two trucks, designed for the logging industry, each consisted of a basic cab and chassis unit constructed by GMC, to which were added components specially ordered by the customer, and installed by the vendor. Each body was bolted to its respective chassis by either six or eight tie-down U-clamps.

As part of each sale, the debtor signed a security agreement with the vendor covering the property being purchased. The plaintiff, identified as the holder of a first lien on the certificate of title for both trucks, perfected its security interest in the vehicles pursuant to the applicable state statutes. No financing statement concerning any part of either truck was filed with the Secretary of State.

After bankruptcy proceedings had begun against the debtor, the plaintiff filed a complaint for relief from the stay.

The trustee in bankruptcy, in turn, filed a counterclaim, seeking to determine the extent and validity of the perfection of the security interests claimed by the plaintiff in the two trucks. The trustee contended the plaintiff's perfected security interest extended only to the truck's basic cab and chassis units, not to the added components.

The court, after noting the UCC "does not indicate the degree to which one chattel must be affixed to another in order to constitute an accession," *id.* at 224, listed factors it considered pertinent in determining whether a chattel has become an accession:

(1) [whether the personalty] is physically annexed, at least by juxtaposition, to the [property]....

.    .    .    .    .

ble with other parts. *See, e.g., IDS Leasing Corp. v. Leasing Associates, Inc.,* 590 S.W.2d 607, 609 (Tex.Civ.App.1979).

(3) [whether] it was so annexed with the intention on the part of the person making the annexation to make it a permanent accession to the [property].... which intention is not the hidden intention of the party making the annexation, but the intention which the law deduces from such external facts as the structure and mode of attachment, the purpose and use for which the annexation has been made and the relation and use of the party making it.

*Lyford,* at 224. The court further stated it would examine "whether the chattel is united to the materials of another and whether the combined materials form a joint product." *Id.* at 224–25.

In finding the components were accessions and, therefore, the plaintiff's security interests therein were properly perfected, the *Lyford* court explained:

Here, the evidence shows that all the components in question were attached to the cab and chassis unit. While it is true that certain components are merely bolted, not welded, to the chassis, the evidence does show that their removal would not be an insignificant task, taking two men a full day or more to do so.

The components and the chassis unit clearly are united in the prosecution of a common enterprise. Evidence showed that the components were useful and necessary for the operation of the trucks as logging trucks.

.    .    .    .    .

Finally, the external facts show that the annexations were made with the intention that they be permanent. The components were annexed before delivery of the trucks to the debtor, and the debtor purchased the completed units from a single seller, granting it a security interest in the assembled units.

*Id.* at 225.

Applying the above standards to the case at bar, we find that the evidence does not preponderate against the trial court's finding that the Atlas wrecker assembly was an accession to the GMC truck, and the appellee properly perfected its security interest in the property by a notation on the vehicle's title.

The proof indicates the wrecker assembly was sold to the appellee already bolted to the truck. The entire unit had been painted as one, indicating a "joint product" that was intended to remain as such indefinitely. Finally, as in *Lyford,* the component and the chassis unit clearly were "united in the prosecution of a common enterprise," a wrecker.

Finding the wrecker assembly to be an accession of the GMC truck, we affirm the decision of the trial court. The cost of the appeal is taxed to the appellant.

PARROTT and FRANKS, JJ., concur.