NATIONAL BOND & INVESTMENT COMPANY, APPELLANT, V. CHARLES HAAS, APPELLEE.

FILED MARCH 28, 1933. No. 28485.

*Robert G. Fuhrman* and *Harold R. Jordan,* for appellant.

*Harvey R. Ellenberger, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

The plaintiff and appellant, National Bond & Investment Company, of Chicago, replevied an automobile from defendant, Charles Haas, a garageman, who claimed a lien for repairs. Jury being waived, court entered judgment for the amount of repairs. Plaintiff appeals.

Upon July 23, 1931, Everett Witcher, residing at Robertson, Missouri, gave a mortgage for $495 to the St. John's Motor Car Company, of St. Louis, Missouri, upon a 1931 Plymouth coupé, and upon the same chattel mortgage blank there was an assignment of said mortgage from the said Motor Car Company to the National Bond & Investment Company, of Chicago, Illinois. Upon the trial of this case, all of the evidence was stipulated, and such stipulation, together with one letter and the original note and mortgage, constituted all of the evidence in the case.

In examining the stipulations, it is found that one was drawn up on behalf of the plaintiff and agreed to by the defendant, and another was drawn up on behalf of the defendant and agreed to by the plaintiff. Additional facts shown in the stipulation may be briefly stated as follows: Everett Witcher paid the monthly instalment payments, which were due upon the 23d of August, September, and October, 1931, but defaulted as to all other payments, and that there was due and owing upon the note and mortgage $371.25, with interest; that during the month of November, 1931, the said Everett Witcher, without the knowledge of the plaintiff, drove said car from the state of Missouri to Cuming county, Nebraska, where the car was wrecked, and without the knowledge of the National Bond & Investment Company, assignee of said note and mortgage, placed said car in the possession of the defendant, Charles Haas, for repair, and the defendant agreed to make the repairs, which included straightening three bent fenders, straightening the frame and body and hood, bumper and shell, and front axle, and welding the engine hanger, and making many other re-

pairs, as itemized in the answer, and for which said Everett Witcher, owner of the car, agreed to pay to the defendant the full sum of $175. It was stipulated that such sum was the fair and reasonable value of the work and materials placed upon the automobile, no part of which has been paid or collected; that the defendant, Charles Haas, had no knowledge or notice whatever of the rights of the plaintiff, or of its chattel mortgage, until all of the work contracted to be done by the owner had been entirely completed; that thereafter said automobile was taken from the possession of the defendant by a writ of replevin, obtained by the plaintiff. The fair and reasonable value of the automobile when so taken was $350, and plaintiff never authorized the defendant to repair said automobile, and had no knowledge that said automobile was out of the state of Missouri, or at West Point, Nebraska, or in possession of the defendant at his garage in said town, until November 24, 1931, when plaintiff received a letter from Everett Witcher, the owner of said car, mailed from New Orleans, Louisiana, reading as follows:

"Dear Sirs: Am unable to meet my payments. My car is at West Point, Nebr., at the top & body shop. Everett Witcher."

Thereafter the plaintiff, National Bond & Investment Company, filed its amended petition in the district court for Cuming county, Nebraska, setting out the facts in the case, and alleging that plaintiff made demand upon the defendant for possession of said automobile to the plaintiff, and plaintiff prayed judgment for the return of the automobile, or for the sum of $371.25 and damages in the sum of $50.

The defendant in his answer admits that Everett Witcher was the owner and in possession of the automobile, and as such owner delivered the automobile to the defendant, and employed the defendant to make the repairs thereon, and the defendant prayed judgment for the return of the automobile or for the value of the de-

fendant's possession in the sum of $175. The reply was a general denial. A jury was waived by the parties, and cause submitted upon the stipulation and exhibits, and the court found that the defendant was entitled to possession of the automobile at the time of the commencement of the action, and that the automobile was of the value of $350 when it was taken on writ of replevin, and that said automobile should be returned to the defendant within five days or, failing so to do, the plaintiff should pay to the defendant the sum of $175 as the value of his right of possession and the sum of $1 for the unlawful detention, and gave defendant judgment accordingly.

In its motion for a new trial the plaintiff set out the following reasons for a reversal of the judgment: First, that the judgment was contrary to law; second, that it was contrary to the evidence; and, third, that the court erred in refusing to state in writing conclusions of fact found separately from the conclusions of law, as requested in writing by the plaintiff in accordance with the provisions of section 20-1127, Comp. St. 1929.

This case involves the determination of the rights of a repair man in a mortgaged car which he has repaired. In 1913 our artisan's lien law was passed, which is found in sections 52-201 to 52-203, Comp. St. 1929, which provides, as applied to this particular case, that any person who repairs an automobile at the request of the owner shall have a lien on such automobile while in his possession for his reasonable or agreed charges for work done or material furnished, and shall have the right to retain said property until the charges are paid, and such person making such repairs shall file in the office of the clerk of the county in which the work was done, within 60 days after performing such work, a verified statement and description of the work done or material furnished, and that such verified statement so filed shall be prior and paramount to all other liens upon said property except those previously filed in the said office of the county clerk in the county where the work was done, and

shall be treated in all respects as a chattel mortgage, which may be foreclosed within one year after the filing of such lien, but such lien shall be subject to the rights of third parties who have purchased the property prior to the filing of said lien without knowledge or notice of the rights of the artisan.

An additional law was enacted in 1923 which gives a lien for services performed upon any personal property, and is found in sections 52-601 to 52-605, Comp. St. 1929, and provides that a person who has performed work or advanced material has a lien upon personal property for the reasonable or agreed charges, and is entitled to retain said property until his claim is satisfied, as such property shall be exempt from attachment or execution until the lien is satisfied, and provides that, if the claim is not paid within 90 days, he may advertise and sell the property at auction at a specified time and place, and out of the proceeds of the sale the lien for work and materials shall first be paid, with costs of sale. Then section 52-605 provides: "At any time before the goods are so sold, any person claiming a right of property or possession therein may pay the claimant the amount necessary to satisfy his lien and pay the reasonable expenses and liabilities incurred in serving notices of advertising and preparing for sale up to the time of such payment. The claimant shall deliver the goods to the person making such payment if he is a person entitled to the possession of the goods on the payment of the charges thereon."

Considering all of these provisions together, it provides that the artisan has a lien superior to all liens except those previously filed in the office of the county clerk in his own county, and it further provides that, if the artisan is holding the property, planning to sell the same for his charges, another person may pay off the artisan's lien and secure the property. If the mortgage had been filed in another county in Nebraska, it is clear from this law that the artisan's lien would have been superior to

such mortgage lien, and the mortgage filed in St. Louis cannot have any greater rights than would a mortgage filed in another county in Nebraska, and the lien under a Missouri law could not supplant the statutes of Nebraska, which protect the right of the artisan in Cuming county for the repairs made upon the car under the direction of the owner.

The facts in this case show that the artisan was not at fault in any wise. The owner of the car delivered the car to him in a wrecked condition, and they agreed upon the price of $175 for putting the car in good condition. The artisan had the car delivered to him by the owner of the car, and for such work, so ordered and agreed upon, he is entitled under the law to a lien to protect him for his labor and material.

It is insisted by the appellant that our court has already passed upon the question, and decided that the lien of an artisan is inferior to that of the vendor of the automobile. It may be admitted that, in the case referred to, being *General Motors Acceptance Corporation v. Sutherland,* 122 Neb. 720, in a well-reasoned opinion, this court held that the repairer of an automobile sold under conditional sales contract had no possessory lien under section 52-201, Comp. St. 1929, as against unpaid conditional vendor, in absence of showing that repairs were made at the request of, or with the consent of, the conditional vendor or assignee. It is stated in that opinion that there is a marked difference between the position of a mortgagor and a conditional sales vendee; that the former must own the property which he mortgages, which is not true as to the conditional sales vendee, who holds possession under an executory contract to purchase, and while he may have equitable rights in the property to the amount of the payments he has made, he is not the owner.

"A chattel mortgage in this state merely creates a lien and does not pass title to the mortgagee. It is in the nature of a pledge to secure payment of the debt." *Ap-*

pel Mercantile Co. v. Kirtland, 105 Neb. 494. It is clear that no Nebraska case cited holds other than that the garageman has a lien which extends to all repairs made at the owner's request, but that such a lien does not prevail against a conditional seller who has not parted with the title. 10 Neb. Law Bulletin, 160.

The act of 1913, as set out in sections 52-201 to 52-203, Comp. St. 1929, put into our statute the old common-law right of lien, and the Code, being but a continuation of the common law, is to be construed therewith, and in this enactment the Code but declares the lien already recognized by the common law, which was discussed at length in the case of Drummond Carriage Co. v. Mills, 54 Neb. 417. This case, arising in 1894, before the days of automobiles, concerned a buggy which a physician used in his business, and upon which a chattel mortgage was outstanding, and as the buggy needed repairs, it was left at a shop for that purpose, and there retained to enforce the lien for the repairs. This court held that the mortgage lien was subordinate to the common-law lien in force in 1894, since the recitals of the mortgage disclose that the mortgagor had at least implied authority from the mortgagee to have the repairs made. In this case, reference was made to the English case of Williams v. Allsup, 10 C. B. n. s. *417, which appears to be one of the leading cases on this subject. It was heard before the court of common pleas in 1861. The owner of a steamboat, Loch Lomond, executed a mortgage thereon to certain bankers at Chester upon October 1, 1856, and registered such mortgage at the custom house in Liverpool, this mortgage being set out in the opinion. Such steamboat was condemned as unseaworthy, and the government surveyor refused to renew her certificate to enable her to be used and navigated, of which facts the mortgagees were ignorant, and the owner thereupon turned the ship over to a ship builder at Preston, who did work and furnished material to the amount of over 870 pounds, and thereby greatly improved its value, and

enabled the ship to be used and navigated, and without which repairs she was unseaworthy. The mortgagees demanded possession of the boat, which was refused until the repairs were paid. The owner was adjudicated a bankrupt. Chief Justice Erle held that the mortgagee having allowed the mortgagor to continue in apparent ownership of the vessel created the implication that the mortgagor might do all that would be necessary to keep her in an efficient state, and when the vessel was condemned the mortgagor did that which was obviously for the advantage of all parties interested. It was provided in the seventieth section of the merchant shipping act that a mortgagee shall not, by reason of his mortgage, be deemed to be the owner of a ship, nor shall the mortgagor be deemed to have ceased to be the owner thereof, and that it was much to the interest of the mortgagee that the mortgagor should be held to have power to confer a right of lien for ship repairs necessary to keep her seaworthy.

In line with this holding, we find by examining the Missouri chattel mortgage that, in the case at bar, it is provided therein that the mortgagor admits that the automobile was in good condition and repair at the time it was received by him, and he covenants to keep it in first class condition at all times at his expense, which provision clearly implies that it is the duty of the owner and mortgagor to have the automobile repaired whenever necessary to keep it in good running order.

Complaint is made of the fact that, although seasonably requested in writing, the trial court did not set out in writing his conclusions of fact and law separately, as required by section 20-1127, Comp. St. 1929. An examination of the record in this case discloses that all of the facts in the case were stipulated; there was no question of fact disputed between the parties. But, while not set out in separate paragraphs, the trial court did find that the defendant was entitled to possession of the property at the commencement of the action, and the value of that

possession and the value of the car. These findings cover the important points in the case, and the failure to find additional facts set out in appellant's brief did not constitute reversible error.

Finding no error in the record, the judgment is

AFFIRMED.