ALLIED INVESTMENT COMPANY, A CORPORATION, APPELLANT, v. JAMES ROY SHANEYFELT ET AL., APPELLEES.

74 N. W. 2d 723

Filed February 10, 1956. No. 33869.

*Edgerton & Powell,* for appellant.

*Charles L. Whitney, Jr.,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Allied Investment Company, a corporation, originally brought this action in the county court of Hamilton County to replevin a 1949 Plymouth Tudor automobile, motor No. P 18-267762, serial No. 12272050, and thereby took possession of it from defendants Vetter, hereinafter called defendants. Plaintiff claimed to be owner of the automobile and entitled to possession thereof as assignee of a conditional sales contract duly executed thereon, which was timely filed and recorded. Defendant James Roy Shaneyfelt, hereinafter called Shaneyfelt, defaulted. Defendants answered, denying

that plaintiff was entitled to possession of the automobile because, while Shaneyfelt was in full possession thereof, he had delivered same to defendants who at his request had repaired it by installing therein a rebuilt motor belonging to them, for which reason they refused to give possession when plaintiff made demand therefor. Defendants prayed for judgment against plaintiffs for redelivery of the motor and damages for removal thereof from their premises, or in the alternative for judgment against plaintiff for $189.74, the amount owing them for improvement of the automobile.

Upon an oral stipulation of facts, the county court rendered judgment substantially finding and adjudging that plaintiff was entitled to possession of the automobile only as against Shaneyfelt and that plaintiff should have judgment against him for costs and $189.74 damages. It also found and adjudged that defendants were owners of the rebuilt motor; assessed damages of one cent against plaintiff for wrongful removal thereof; and ordered that plaintiff should return the motor to defendants or pay them $189.74 and damages.

Therefrom plaintiff appealed to the district court where the cause was heard upon the original pleadings and a written stipulation of facts. Thereafter judgment was rendered, the effect of which was to affirm the judgment rendered by the county court, except that defendants were awarded a judgment against plaintiff for $10.82 as damages for wrongful removal of the motor, and plaintiff was awarded judgment against defendant for $1 as damages for wrongful detention of the automobile exclusive of the rebuilt motor.

Plaintiff's motion for new trial was overruled and it appealed to this court, assigning that the trial court erred in finding and adjudging that the rebuilt motor was the property of defendants, and erred in allowing defendants damages against plaintiff. We sustain the assignments.

In the order overruling plaintiff's motion for new trial the court said: "The question presented does not

involve priority of liens. It is a question of identity of property. It is clear that plaintiff has a valid lien and is entitled to recover anything that is covered by it's (its) lien. This is true even if the property has been repaired. Plaintiff is not entitled to something not covered by it's (its) lien; something which it did not and could not identify as property covered by it's (its) lien." However, as we view the record and applicable law, the trial court's judgment was clearly wrong and such part of the conclusions aforesaid as were adverse to plaintiff's rights were erroneous.

The stipulation of facts disclosed as follows: On February 11, 1954, Shaneyfelt purchased the automobile involved from the Gibreal Auto Sales of Omaha.

On February 11, 1954, Shaneyfelt gave the seller thereof a duly executed conditional sales contract covering same, which described the automobile as a "1949 Plym.-Tudor Motor No. P18-267762 Serial No. 12272050" and provided that title to the described automobile "and any additions thereto or substitution therefor" was retained by the seller "until all amounts payable" thereunder were "fully paid" by Shaneyfelt who assumed "risk of loss."

Also on February 11, 1954, the seller assigned said conditional sales contract to plaintiff for valuable consideration, and plaintiff was at all times thereafter the owner and holder thereof.

On February 23, 1954, a certificate of title, No. 23-25830, was duly issued in the name of Shaneyfelt in Boone County, showing thereon that the automobile was subject to the conditional sales contract owned and held by plaintiff in the amount of $650. Also, the original conditional sales contract executed by Shaneyfelt, which contained the assignment thereof to plaintiff, was attached to the certificate of title and filed therewith, which thereby recorded the title together with the conditional sales contract under which plaintiff retained ownership of the automobile. Copies of the certificate

of title and conditional sales contract, with all endorsements thereon, were attached to and made a part of the stipulated facts.

Subsequently, Shaneyfelt removed the automobile from Boone County and placed it in possession of defendants for the purpose of having certain repairs made thereon. Sometime late in March 1954, at a time when Shaneyfelt was in default in his payments under plaintiff's conditional sales contract, and plaintiff was seeking to find his whereabouts and locate the automobile, defendants, at Shaneyfelt's request, installed therein a rebuilt motor, the reasonable value of which installation was $189.74.

On March 25, 1954, plaintiff, while seeking information about the automobile and Shaneyfelt, first learned that the automobile was in the possession of defendants, and on March 26, 1954, plaintiff demanded possession of it from them. However, defendants refused to give possession to plaintiff, and this action was instituted.

Although concededly a replacement motor was installed by defendants, the number thereof was at all times for some unexplained reason identical with the number thereof on February 11, 1954, when the automobile was sold to Shaneyfelt, and as described in both the certificate of title and plaintiff's conditional sales contract when they were filed and recorded on February 23, 1954.

We find no evidence in this record that the condition of the automobile required a replacement motor, and there is no explanation of what became of the original motor. Therefore, we conclude that plaintiff clearly and correctly identified the automobile belonging to it by the serial number and the motor number thereof.

The evidence simply showed that defendants refused to deliver possession of the automobile to plaintiff when it made demand therefor. There is no evidence that defendants refused to deliver possession of the automobile upon the ground that they owned the replacement

motor or in any effective manner had title thereto. It is true that a person in exclusive possession of personal property is presumed to be the owner thereof. However, such presumption does not exist in the absence of exclusive possession, and such a presumption if existent is overcome when met by opposing proof, as in the case at bar. Booknau v. Clark, 58 Neb. 610, 79 N. W. 159. Defendants in this case were not in exclusive possession of the replacement motor installed in the automobile, and at all times they had constructive notice of the plaintiff's right to possession thereof. In such a situation, plaintiff argued that under the stipulated facts defendants had no artisan's lien as against plaintiff under the provisions of section 52-201, R. R. S. 1943, and that under the provisions of section 60-110, R. R. S. 1943, defendants' claim was not valid as against plaintiff who was the record owner and entitled to possession of the automobile with the rebuilt motor therein. We sustain plaintiff's contention.

Section 52-201, R. R. S. 1943, provides in part: "Any person who makes, alters, repairs or in any way enhances the value of any * * * automobile * * * *at the request of or with the consent of the owner, or owners thereof,* shall have a lien on such * * * automobile * * * while in his possession, for his reasonable or agreed charges for the work done or material furnished, and shall have the right to retain such property until such charges are paid." (Italics supplied.) It will be noted that plaintiff, as conditional vendor, was at all times the record owner of the automobile here involved, and the installation of the rebuilt motor by defendants was not done at plaintiff's request or with its consent. Rather, it was concededly done only at the request of Shaneyfelt, in which event defendants had no valid possessory artisan's lien as against plaintiff.

In General Motors Acceptance Corp. v. Sutherland, 122 Neb. 720, 241 N. W. 281, this court held: "All liens are created by law or contract, and to establish a lien

the contract must be made with owner of property on which the lien is sought to be imposed.

"Generally, lien of artisan making repairs to chattel at instance of conditional vendee in possession is subordinate to rights of conditional vendor under contract of which artisan has constructive or actual notice.

"Section 52-201, Comp. St. 1929, giving possessory lien for repairs on automobile, does not warrant presumption that conditional vendee has authority to incumber automobile for repairs thereon without consent of vendor.

"Repairer of automobile sold under conditional sales contract had no possessory lien under section 52-201, Comp. St. 1929, as against unpaid conditional vendor, in absence of showing that repairs were made at request of or with consent of conditional vendor or assignee." In that connection, section 52-201, Comp. St. 1929, is now section 52-201, R. R. S. 1943. Such case was cited and reviewed with approval, but distinguished upon the facts and applicable law, in National Bond & Inv. Co. v. Haas, 124 Neb. 631, 247 N. W. 563, 88 A. L. R. 1180.

We turn then to section 60-110, R. R. S. 1943, a part of the Certificate of Title Act, which provides in part: "Any mortgage, conveyance intended to operate as a mortgage, trust receipt, *conditional sales contract* or other similar instrument covering a motor vehicle, if such instrument is accompanied by delivery of such manufacturer's or importer's certificate and followed by actual and continued possession of same by the holder of said instrument *or, in the case of a certificate of title, if a notation of same has been made by the county clerk on the face thereof, shall be valid as against the creditors of the mortgagor, whether armed with process or not, and subsequent purchasers, mortgagees and other lienholders or claimants but otherwise shall not be valid against them. All liens, mortgages and encumbrances, noted upon a certificate of title, shall take priority according to the order of time in which the same are noted thereon by the county clerk.*" (Italics supplied.)

In Bank of Keystone v. Kayton, 155 Neb. 79, 50 N. W. 2d 511, this court held: "The Certificate of Title Act was enacted for the protection of owners of motor vehicles, those holding liens thereon, and the public."

The circumstances presented here are controlled by the provisions of sections 52-201 and 60-110, R. R. S. 1943. Defendants had actual notice that plaintiff did not request or consent to the motor replacement, and defendants had constructive notice that plaintiff at all times retained ownership of the automobile together with "any additions thereto or substitution therefor"; and that Shaneyfelt assumed any "risk of loss." In such a situation, defendants could not prevail as against plaintiff whose rights as record owner were superior to those claimed by defendants who had no valid artisan's lien as against plaintiff which would permit defendants to retain possession until charges for installation of the rebuilt motor were paid.

In that regard, the effect of defendants' argument was to concede that plaintiff was entitled to possession of the automobile without the rebuilt motor in it, or, in the alternative, with such motor therein as installed by defendants upon payment to them of $184.79 and damages for wrongful removal of same from their premises. Such argument was predicated upon their conclusion that defendants owned the replacement motor and upon their contention that although it was installed in the automobile by them, it did not become a part thereof by accession because it could be readily identified and severed therefrom without material injury thereto or to the automobile. Defendants' contention should not be sustained.

It cannot be logically argued that a motor in an automobile can be identified and severed or removed therefrom without material injury to the automobile. The motor is in fact a vital, integral part, the very life and substance of an automobile. An automobile chassis and body without a motor is not an automobile. The one is

ordinarily as indispensable as the others. An automobile is used for transportation, and without a motor it can serve no useful purpose. In that regard, defendants have cited no authority directly in point to support their contention. There is some confusion in cases, involving other assessories or parts placed or replaced upon automobiles and other machinery, but the authorities relied upon by defendants are clearly distinguishable from the case at bar upon the facts and applicable law. To discuss them further here would serve no useful purpose.

In that connection, Twin City Motor Co. v. Rouzer Motor Co., 197 N. C. 371, 148 S. E. 461, is a case in point, submitted upon stipulated facts, comparable in material respects with those at bar. Therein defendant Rouzer Motor Company sold a described Ford automobile to a buyer who duly executed to defendant a conditional sales contract thereon comparable with that at bar, in order to secure the balance of the purchase price. Such contract was then duly recorded and assigned to Commercial Finance Corporation, another defendant. Subsequently, while in default, the buyer moved to another city where he employed plaintiff, Twin City Motor Company, to and it did place a new motor in the automobile described in the conditional sales contract given to defendant, Rouzer Motor Company, and assigned to defendant, Commercial Finance Corporation. On the same day that the new motor was installed, the buyer executed to plaintiff, Twin City Motor Company, a conditional sales note and chattel mortgage upon the replacement motor to cover the price and installation thereof in the automobile, which instruments were duly recorded. A balance of $89.15 due thereon remained unpaid to plaintiff by the buyer. In an action brought by plaintiff, Twin City Motor Company, against defendant, Rouzer Motor Company and its assignee, the court said: "Is the description in the conditional sales agreement sufficient for the purpose of identifying the property in question? We think so. * * * Do the improvements or

repairs placed on said car become the property of the defendants under the terms of their duly registered agreement, and also by the doctrine of accession? We think so. * * * The lien of defendants is superior to that of plaintiff."

In the case at bar we conclude that in the light of stipulated facts and applicable law, the replacement motor installed by defendants in the automobile became the property of plaintiff who was entitled to possession thereof under the terms of its conditional sales contract and by the doctrine of accession. Further, as heretofore concluded, defendants had no artisan's lien which could be valid as against plaintiff.

For reasons heretofore stated, the judgment of the trial court was clearly wrong. Therefore, it should be and hereby is reversed and the cause is remanded for new trial in conformity with this opinion. All costs are taxed to defendants.

REVERSED AND REMANDED.