Argued and submitted January 11, affirmed May 22, 1985

## THE OREGON BANK, dba Oregon Bank,
*Respondent,*

*v.*

## FOX,
*Appellant.*

## (82-0635-C; CA A31277)

699 P2d 1147

E. Andrew Jordan, Portland, argued the cause for appellant. With him on the briefs was Bolliger, Hampton & Tarlow, Portland.

Jane E. Angus, Portland, argued the cause for respondent. With her on the brief was Sussman, Shank, Wapnick, Caplan & Stiles, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant appeals from a judgment for plaintiff in this conversion action, assigning as errors the granting of plaintiff's motion for summary judgment and the denial of defendant's motion for summary judgment.

The material facts are undisputed. On November 18, 1977, Marco Dental Products, Inc. (Marco), and plaintiff entered into a written agreement whereby Marco granted plaintiff a security interest in certain personal property, including accounts receivable and their proceeds, as security for sums owing plaintiff by Marco. The agreement was signed by defendant, as president of Marco. On September 25, 1980, Marco was in default on its obligations to plaintiff, and on that date plaintiff gave Marco a notice of default and declared all sums immediately due and payable. The total amount due was in excess of $765,000. On September 29, 1980, defendant, as president of Marco, opened a checking account at the Beaverton Banking Company (BBC), with a deposit of $51,402.79, which amount represented proceeds of accounts receivable by Marco. Only defendant was authorized to draw on that account, and he drew checks on it totalling $50,732.65 in payments to Marco's other creditors.

On October 3, 1980, plaintiff and Marco entered into an "Agreement in Lieu of Foreclosure," whereby Marco transferred to plaintiff all of its assets described in the security agreement, including accounts receivable and their proceeds. The agreement was signed by defendant, as president of Marco. Plaintiff took possession of and liquidated all of Marco's assets turned over to it, which did not include the BBC account, the existence of which had not been disclosed to plaintiff. After applying the realized funds to the debt, a deficiency in excess of $200,000 remained.

On October 3, 1980, $48,791.45 was in the BBC account. After that date, checks that had been signed by defendant on September 29, 1980, were presented to BBC for payment and were paid in due course. When plaintiff learned of those facts, it brought this action to recover from defendant the amount in the BBC account on October 3, plus interest, on the theory that he, personally, had converted those funds after plaintiff was entitled to possession. The trial court granted plaintiff's motion for summary judgment, concluding that

plaintiff was entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978). We agree.

An action for conversion lies when there has been an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. *Mustola v. Toddy,* 253 Or 658, 456 P2d 1004 (1969). A secured creditor with the right to possession of the collateral after default may maintain an action for conversion against one who has exercised unauthorized acts of dominion over the property to the exclusion of the creditor's rights. *Murdock v. Blake,* 26 Utah 2d 22, 30, 484 P2d 164 (1971). Although defendant concedes that his conduct in disbursing funds from the BBC account would have been a conversion if plaintiff had had a right to the funds at the time they were disbursed, he contends that plaintiff had no security interest in the BBC account at that time. He argues that there could be no conversion until after the agreement in lieu of foreclosure was executed on October 3.

Section 10 of the security agreement provided in part: "Upon * * * default * * * the Bank shall have * * * the right to take possession of the collateral * * *." Accordingly, on Marco's default, the security agreement gave plaintiff the right to take possession of all collateral, including the proceeds of accounts receivable that were in the BBC account. Although a default may be waived by the secured party, once it has taken an affirmative step to exercise the rights on default granted to it in the security agreement, it has all of those rights. The notice of default was a sufficient affirmative act, unless any of defendant's arguments has merit.

In arguing to the contrary, defendant contends that Marco was entitled to continue using the proceeds of the accounts receivable in the ordinary course of its business until plaintiff demanded that Marco assemble the collateral. He relies on other language in section 10 of the security agreement. As noted, that section provides that, on default, plaintiff shall have the remedies of a secured party under the Uniform Commercial Code, including the right to take possession of the collateral. Defendant urges that the right to take

possession is qualified by the following language in that section:

> "* * * Insofar as collateral shall consist of accounts receivable * * * or the like, the Bank may demand, collect receipt for, settle, compromise, adjust, sue for, foreclose or realize upon collateral as the Bank may determine, whether or not liabilities or collateral are then due * * *."

That language, he argues, requires that plaintiff have made a specific demand on Marco before being entitled to take possession of the collateral consisting of accounts receivable and their proceeds. We do not so interpret that provision. We read the specific language regarding accounts receivable as supplementing, rather than limiting, the preceding language regarding the bank's general right to take possession of the collateral. It authorizes ways in which the bank may deal with and realize on accounts receivable, but does not qualify the bank's right to possession of that collateral.

■ Defendant also relies on ORS 79.5030, which provides:

> "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. * * *"

He argues that that section allows a secured creditor to take possession of collateral only after it has made demand on the debtor to assemble the collateral and make it available to the secured party. However, the only limitation imposed by the language permitting the creditor to require the debtor to assemble the collateral is that the security agreement authorize the creditor to require the debtor to do so. It places no limitations on the creditor's right to take possession; it merely provides for additional means by which the creditor may require the debtor to assist in assembling the collateral. Under defendant's argument, if the security agreement does not authorize the creditor to require the debtor to assemble the collateral, the creditor would not be entitled to take possession. That makes no sense and is not the law. The secured

party is not required by the Uniform Commercial Code to notify the debtor, after notice of default, that it intends to take possession of the collateral. *See Kupka v. Morey,* 541 P2d 740, 746 n 3 (Alaska 1975).

■■■■■ Defendant's final argument on this point is that an action for conversion does not lie until a demand has been made for the return of the property. That is the general rule when the alleged act of conversion is only the *detention* of the property. *See Jeffries v. Pankow,* 112 Or 439, 223 P 745, 229 P 903 (1924). In such a case, the mere detention of the property is not sufficient evidence of a disposition to convert it to the holder's own use or to divest the true owner of his right to the property. However, when the act consists of a wrongful taking, assumption of ownership over or use of the property, there is no necessity for a demand; the defendant's conduct is sufficient to prove the conversion. *See Gowin v. Heider,* 237 Or 266, 386 P2d 1, 391 P2d 630 (1964), and *Daniels v. Foster & Kleiser,* 95 Or 502, 187 P 627 (1920). Here, defendant's act of disbursing accounts receivable proceeds was in violation of plaintiff's right to take immediate possession of those proceeds and was a conversion in and of itself, without prior demand and refusal.

■■■ ■■■ We conclude that, under the terms of the security agreement, plaintiff had a right to possession of the collateral immediately upon default, that that right was exercised when plaintiff gave Marco notice of default and that it was not required to make demand on Marco to assemble the collateral in order to acquire that right. In drawing checks on the BBC account, which consisted of collateral in the form of proceeds of accounts receivable, defendant converted those proceeds and may be required to pay plaintiff the full value of the proceeds.

Defendant argues alternatively that, in any event, plaintiff had no security interest in a portion of the BBC account that he contends was held in trust for the United States Government. On September 29, 1980, defendant drew a check on the BBC account payable to the Internal Revenue Service in the amount of $17,300.47, in payment of income tax withheld from Marco's employes' wages. He neglected, however, to sign it. On October 7, 1980, that check was returned by IRS to BBC for defendant's signature. He then signed the

check, which was mailed by the bank to IRS on October 8, 1980.

■ Defendant's argument is that the amount of that check was held in trust for the United States Government and was not subject to plaintiff's security interest. He relies on Internal Revenue Code § 7501(a):

> "Whenever any person is required to collect or withhold any Internal Revenue Tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust with the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to taxes from which such fund arose."

The provisions of § 7501(a) do not operate in isolation. The principles of trust law regarding the tracing of funds are applicable. *Hercules Service Parts Corp. v. United States,* 202 F2d 938 (6th Cir 1953). In *Slodov v. United States,* 436 US 238, 56 L Ed 2d 251, 98 S Ct 1778 (1978), the Supreme Court rejected the argument that § 7501 establishes an obligation to pay over to the United States after-acquired cash which is unrelated to the taxes withheld:

> "The language of § 7501 limits the trust 'to the amount of the taxes *withheld* or *collected*.' * * * [U]nder § 7501 there must be a nexus between the funds collected and the trust created. That construction is consistent with the accepted principle of trust law requiring tracing of misappropriated trust funds into the trustee's estate in order for an impressed trust to arise. * * *" 436 US at 256. (Emphasis in original.)

It is undisputed that the BBC account was made up entirely of proceeds of Marco's accounts receivable; no funds actually withheld from wages were in that account. No contention is made that the funds withheld could be traced to that account, or that the unsigned check to IRS was drawn on funds consisting of withheld wages.

■ Even if the writing of a signed check on the BBC account would have been sufficient to segregate withheld wages and thereby create a "trust" for the United States Government, that did not occur until after plaintiff's exercise

of its right to possession of the account had occurred. Accordingly, plaintiff's security interest in the account would be superior to the interest of the United States. *See Barrs, Jr., v. Barrs Rent-A-Car Co.,* 71 Ohio App 465, 50 NE2d 388 (1943), and *School Dist. No. 15 v. Peoples Nat. Bank,* 13 Wash 2d 230, 124 P2d 947 (1942). On the date that plaintiff exercised its right to take possession of the account, its security interest was superior to any lien that the United States might acquire subsequently by virtue of defendant's later attempt to create a "trust" by writing the check. As we have said, the drawing of the check, even for the purpose of attempting to create a trust, was a conversion of property belonging to plaintiff.

Defendant's remaining assignments of error are based on his assumption that the conversion could not have occurred before the execution of the agreement in lieu of foreclosure. In the light of our holding, we need not reach them.

Affirmed.