Argued and submitted December 13, 1985, resubmitted In Banc June 4, affirmed September 10, reconsideration denied November 7, petition for review allowed December 23, 1986 (302 Or 460)

# BANCORP LEASING AND FINANCIAL CORP.,
*Respondent,*

*v.*

# STADELI PUMP & CONSTRUCTION, INC. et al,
*Defendants,*

## STADELI,
*Appellant.*

(144,821; CA A34773)

724 P2d 948

Larry Jon Pound, Salem, argued the cause for appellant. With him on the briefs was Pound & Eichelberger, Salem.

Mark B. Comstock, Salem, argued the cause for respondent. With him on the brief was Garrett, Seideman, Hemann, Robertson & DeMuniz, P.C., Salem.

GILLETTE, J., Pro Tempore

Young, J., dissenting.

Newman and Deits, JJ., not participating.

## GILLETTE, J., Pro Tempore

In this conversion action tried to the court, defendant Otto Stadeli[1](hereafter "Otto") appeals from a judgment in favor of plaintiff. The issue is whether plaintiff acquired by accession a security interest in a diesel engine owned by defendant. If it did, the trial court's judgment is correct. We affirm.

In 1978, plaintiff's predecessor loaned money to Stadeli Pump & Construction, Inc., and, to secure the loan, perfected a security interest in, *inter alia,* a dump truck owned by the corporation. The truck was operable at the time the security interest was perfected. In 1981, however, the truck's engine "blew up," and it was removed. The truck sat idle without an engine until early 1983, when Otto purchased another engine and loaned it to his sons, Marvin and Larry, who were principals in the corporation. Later in 1983, the sons removed the engine and returned it to Otto. The corporation defaulted on plaintiff's loan. In December, 1983, plaintiff took possession of the engineless truck, which was eventually sold for $8,500. Plaintiff brought this action to recover the difference between the sale price and the truck's value with the engine.

The trial court held that the engine was an accession to the truck and, thus, became subject to plaintiff's security interest when it was installed in the truck.[2] The court ruled

---

[1]Plaintiff also sought to recover from the remaining defendants various other equipment, as well as the balance due on loans made to Stadeli Pump & Construction, Inc. Judgment by default was entered against Stadeli Pump & Construction, Inc., and Windsor Island Sand & Gravel, Inc. Larry and Marvin Stadeli filed bankruptcy; the judgment dismissed the claims against them without prejudice. ORCP 54.

[2] The court found:

"1.    Plaintiff is an Oregon corporation in good standing;

"2.    Defendant Stadeli Pump & Construction, Inc. and Windsor Island Sand & Gravel, Inc., are in default for want of an answer;

"3.    Defendants Larry Stadeli and Marvin R. Stadeli have each filed Petitions in Bankruptcy under 11 U.S.C. section 701, et seq, and an Order of Discharge has been entered for each of them;

"4.    Defendant Stadeli Pump & Construction, Inc. executed a promissory note and security agreement describing certain collateral, including one 1978 GMC Dump Truck, VIN 928V-564726, License T385966, equipped with 8V92 diesel engine, 10-speed transmission, SQHD rearend, 10-12 yard box, 3 axle, 16.5

that return of the engine to Otto constituted a conversion and entered judgment for plaintiff. On appeal, Otto argues that the court's findings of fact do not support its conclusion that accession had occurred.

■    In *Oregon Bank v. Fox,* 73 Or App 612, 615, 699 P2d 1147 (1985), we stated:

> "A secured creditor *with the right to possession of the collateral* after default may maintain an action for conversion against one who has exercised unauthorized acts of dominion over the property to the exclusion of the creditor's rights." (Emphasis supplied; citations omitted.)

Unless otherwise agreed, a secured party has the right to take possession of the collateral on default. ORS 79.5030. "Collateral" is property subject to a security interest. ORS 79.1050(1)(c). The parties agree that plaintiff had a security

---

by 22.5 front tires and 10 by 22 rear tires;

"5.    Plaintiff duly perfected its security interest in certain collateral of Stadeli Pump & Construction, Inc., among which was the above-described 1978 GMC Dump Truck, by filing a Financing Statement with the Oregon Secretary of State on October 18, 1978, filing a Continuation Statement on September 22, 1983, and by being noted as the secured interest holder on the Certificate of Title to the 1978 GMC Dump Truck with the Oregon Department of Motor Vehicles.

"6.    Subsequent to the perfection of Plaintiff's security interest in the 1978 GMC Dump Truck, Defendants replaced the original engine with a replacement diesel engine owned by Defendant, Otto Stadeli;

"7.    Defendant, Otto Stadeli, filed no Financing Statement of any interest in the replacement engine installed in the 1978 GMC Dump Truck;

"8.    On or about July 29, 1983, Defendant, Stadeli Pump & Construction, Inc., defaulted on its payments under the Promissory Note and Revision Agreements and Plaintiff became entitled to possession of all of the collateral of Stadeli Pump & Construction, Inc., including the 1978 GMC Dump Truck with all of the described equipment;

"9.    On or about November 18, 1983, Defendant, Otto Stadeli, caused the replacement engine to be removed from the 1978 GMC Dump Truck;

"10.    The sums remaining due and owing to Plaintiff from Defendant, Stadeli Pump & Construction, Inc., pursuant to the Promissory Note dated October 16, 1978 is $65,697.71, plus interest at the rate of twelve percent per annum (12%) from July 29, 1983 * * *."

Finding number seven makes a confusing reference to Otto's failure to "file a financing statement." Filing a financing statement is a means of perfecting a security interest, *see* ORS 79.3020; 79.3040, which has no bearing on any issue in this case, as far as we can tell. The court may have believed that defendant had to perfect a security interest in the engine in order to take advantage of ORS 79.3140, *see* n 3, *infra;* however, attachment of the security interest, ORS 79.2030, not perfection, is the critical event under ORS 79.3140. .

interest in the engine only if it had acceded to the truck by operation of law.[3]

The Uniform Commercial Code does not define accession; we look to the common law. *See* ORS 71.1030. Accession is "a term of legal classification * * * generally employed to signify the right of an owner of personal property to the personal property of another which is incorporated into or united with his property." 1 Am Jur 2d, "Accession and Confusion," § 1. A claim of title by accession "may be defeated if [the] materials [added by another] can be identified and severed without injury to the original property." 1 Am Jur 2d, "Accession and Confusion," § 2. There is, however, some disagreement as to what additions are regarded as severable and what additions are regarded as becoming an integral part of the whole.

Some courts have taken a functional approach: if the vehicle's "usefulness" is destroyed by removal of the part, the part accedes to the vehicle on its installation. *See, e.g., Lincoln Bank & Trust Co v. Netter,* 253 SW2d 260 (Ky 1952); *Allied Inv. Co. v. Shaneyfelt,* 161 Neb 840, 74 NW2d 723 (1956). In the latter case, the court stated:

> "It cannot be logically argued that a motor in an automobile can be identified and severed or removed therefrom without material injury to the automobile. The motor is in fact a vital, integral part, the very life and substance of an automobile. An automobile chassis and body without a motor is not an automobile. * * * An automobile is used for transportation, and without a motor it can serve no useful purpose." 161 Neb at 847-48.

Otto argues that this view overlooks the fact that the truck was useless before installation of the engine. However, Otto himself overlooks the fact that the plaintiff's security interest was in an operable truck and that it was installation of Otto's engine in the truck that changed it back to the condition it had enjoyed at the time of the creation of the security agreement.

---

[3] Plaintiff argues that it had rights in the engine superior to those of Otto, because Otto failed to attach his "security interest" before installation of the engine. *See* ORS 79.3140. However, Otto correctly notes that ORS 79.3140 states a rule of priority as between two creditors with security interests in the same collateral and does not apply where the creditor claiming priority has *no* security interest in the collateral. Here, the existence of plaintiff's security interest depends on whether the engine acceded to the truck.

Other courts have held that an added part does not accede to a vehicle when the part can be readily removed without "damage" to the vehicle. *See, e.g., Bank of America v. J. & S. Auto Repairs,* 143 Ariz 416, 694 P2d 246 (1985); *Atlas Assurance Co. v. Gibbs,* 121 Conn 188, 183 A 690 (1936); *Omaha Standard, Inc. v. Nissen,* 187 NW2d 721 (Iowa 1971); *Havas Used Cars v. Lundy,* 70 Nev 539, 276 P2d 727 (1954). *See also* Brown, *Personal Property* § 25 (1936). In choosing this approach, the Arizona Supreme Court in *Bank of America v. J&S Auto Repairs, supra,* reasoned:

"We believe that the cases such as *Atlas [Assurance Co. v. Gibbs, supra,]* and *Havas [Used Cars, Inc v. Lundy, supra],* holding that detachable parts are not accessions are better reasoned and provide a more equitable result than *Lincoln Bank* and *Allied Investment* by preventing a complete windfall to the chattel owner. The doctrine of accession stems from the equitable notion that an owner of a chattel is entitled to his chattel in the same or improved condition after it has been tampered with by an innocent trespasser. The principle was not designed or intended to give the owner of the chattel more than he had to start with, but it was intended to assure he would not obtain his chattel in a condition of less value or usefulness than before it was changed by a third party. Thus, if the chattel was improved or enhanced and the improvements could not be severed from the chattel without injury to it, the improvements passed to the owner.

"Mass production of automobiles, however, has resulted in standardization of equipment, allowing for additional and ready removal of many parts without damage to the automobile. After repair one can remove parts leaving the vehicle in the same condition as before the repairs. Thus, where a motor and parts can be removed and the garageman offers to remove the parts, he should be entitled to either the parts, with removal performed at his expense, or the value of the parts. We hold that if they can be removed without damaging the vehicle, detachable parts added to a motor vehicle are not accessions. Whether certain parts can be removed without damage or injury to a vehicle is a factual question that must be determined in each case." 143 Ariz at 422-23. (Emphasis in original.)

We have two difficulties with this approach. First, it is hard to imagine greater "damage" to a truck than rendering it totally inoperable—the necessary consequence of taking out its engine. Second, treating this issue as one of fact creates the

ludicrous possibility that an engine accedes or not, depending on how many bolts and hoses must be attached. We find the view expressed in *Allied Investment Co. v. Shaneyfelt, supra,* to be better reasoned, and we adopt it. We hold that an engine that is added to a motor vehicle accedes to the motor vehicle as a matter of law.

Affirmed.

**YOUNG, J.,** dissenting.

I dissent. The essential facts are not disputed. Plaintiff has a security interest in the truck. The engine failed. After the truck sat idle for roughly two years, a replacement engine was installed. Otto owned the replacement engine and he loaned it to his sons, the principals in the debtor corporation, who installed it in the truck. After the debtor defaulted on its loan from plaintiff, the replacement engine was removed from the truck and returned to Otto. The question is whether the replacement engine acceded to the truck. If it did, plaintiff acquired a security interest in the engine, and its removal constituted a conversion. Because the "usefulness" or "functional" approach adopted by the majority results in Otto's paying the price for the debtor's failure to maintain the collateral as required by the security agreement, I would adopt the approach taken in *Bank of America v. J.& S. Auto Repairs,* 143 Ariz 416, 694 P2d 246 (1985).

Otto correctly argues that the "usefulness" approach overlooks the fact that the truck was useless before installation of the replacement engine. The majority attempts to counter that argument:

> "However, Otto himself overlooks the fact that the plaintiff's security interest was in an operable truck and that it was installation of Otto's engine in the truck that changed it back to the condition it had enjoyed at the time of the creation of the security agreement." 81 Or App at 375.

I understand that statement to mean that whether a third party who loans property to the debtor loses title to the property depends on whether the debtor has failed to maintain the collateral in the condition it was in at the time of creation of the security interest. Although the debtor's failure to maintain the collateral in good condition may be relevant as

between the debtor and the secured party, it has no relevance in applying the doctrine of accession against a third party.

Accession is a "mode of acquiring title." 1 Am Jur 2d, *Accession and Confusion,* § 1. The general rule is that "[w]hen goods of two different owners are incorporated together, the title to the resulting product goes to the owner of the principal goods." Brown, *Personal Property,* § 25 (1936). A material consideration which modifies the general rule is whether the article attached can be readily removed without damage to the principal property. *See* cases cited by the majority, 81 Or App at 376. The Arizona Supreme Court concisely stated the purpose behind the doctrine of accession and the equitable considerations that are important in applying the doctrine:

> "The doctrine of accession stems from the equitable notion that an owner of a chattel is entitled to his chattel in the same or improved condition after it has been tampered with by an innocent trespasser. The principle was not designed or intended to give the owner of the chattel more than he had to start with, but it was intended to assure he would not obtain his chattel in a condition of less value or usefulness than before it was changed by a third party." *Bank of America v. J&S Auto Repairs, supra,* 143 Ariz at 422.

In the present case, it is safe to say that the truck was essentially useless when it was without an engine and that plaintiff's security interest was diminished accordingly. No one claims that title to the replacement engine passed to the debtor when Otto loaned the engine. The evidence is that the replacement engine is identifiable and severable from the truck. The last and overriding factor is whether the engine could be readily removed without damage to the truck.[1] If that can be done, I would follow the approach of *Bank of America v. J&S Auto Repairs, supra,* and hold that the engine did not accede to the truck. *See Zandbergen v. Burch,* 33 Or App 363, 576 P2d 812, *rev den* 283 Or 99 (1978).[2] This strikes me as a

---

[1]Although there is a deep division in the cases in applying the doctrine of accession, one thing seems clear: it is a question of fact whether or not an article of personal property becomes so affixed to other property as to become an accession. *Mack's Used Cars v. Tenn. Truck & Equipment,* 694 SW2d 323, 325 (Tenn App 1985); *Annot.,* 43 ALR2nd 813.

[2]I understand *Zandbergen v. Burch, supra,* to define accession substantially the same as I would. The confusion stems from *Zandbergen's* holding. The court held, arguably mistakenly, that conversion will lie when the plaintiff has a *colorable* claim to the chattel by virtue of the doctrine of accession, regardless of whether there was an *actual* accession.

better rule, and it avoids the inequitable result, fashioned by the majority, of penalizing the lender of the engine for the failure of the debtor to maintain the truck.

Because the trial court did not make findings of fact as to whether the engine is removable without damage, I would remand the case to the trial court to make further findings and conclusions and enter judgment accordingly.

Warren and Van Hoomissen, Judges, join in this dissent.