Argued and submitted March 4, reversed and remanded July 8, 1987

# BANCORP LEASING
# AND FINANCIAL CORP.,
*Respondent on Review,*

*v.*

# STADELI PUMP
# & CONSTRUCTION, INC. et al,
*Defendants,*
# STADELI,
*Petitioner on Review.*

## (TC 144821; CA A34773; SC S33337)

739 P2d 548

Robert J. Thorbeck, Salem, argued the cause and filed the brief for petitioner on review.

Thomas E. Ewing, Salem, argued the cause for respondent on review. With him on the briefs were Mark B. Comstock and Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

LENT, J.

## LENT, J.

Defendant Otto Stadeli (Stadeli) purchased a replacement engine for a dump truck that was owned by Stadeli Pump & Construction, Inc. (SP&C), but in which plaintiff Bancorp Leasing and Financial Corp. (Bancorp) had a perfected security interest. After SP&C defaulted on its obligations to Bancorp, Stadeli removed the engine and sold it before Bancorp could take possession of the truck. Bancorp then brought this action for conversion of the engine.[1] Following a non-jury trial, the circuit court awarded judgment to Bancorp, concluding that its security interest in the truck extended to the engine through the engine's accession to the truck. The Court of Appeals affirmed *in banc. Bancorp Leasing v. Stadeli Pump,* 81 Or App 371, 724 P2d 948 (1986). Because we hold that the engine did not accede to the truck, we reverse and remand for further proceedings.

### I.

Stadeli founded SP&C in 1950 but sold half of the corporation to his sons Larry and Marvin in 1977 and sold the remainder to them in 1979. He retained a security interest in certain corporate property but thereafter had no connection with the corporation apart from giving occasional advice and financial assistance to his sons.

In 1978 SP&C gave to Bancorp a promissory note for $357,088.[2] To secure the note, SP&C signed a security agreement giving to Bancorp a security interest in "[a]ll equipment, fixtures now owned or hereafter acquired, as described, but not limited to those items on Exhibit 'A' attached" and in "any and all additions, attachments, and accessions thereto." Among the items on "Exhibit 'A'" was the dump truck at issue in this case. The security agreement provided that SP&C was to keep the collateral "in good order and repair" and that it would be in default upon "loss, theft, damage, destruction, sale or encumbrance" of the collateral. Bancorp filed financing and continuation statements covering the truck and was

---

[1] Bancorp also sought to recover from other defendants the balance due on the obligation, as well as possession of additional security. We are not here concerned with those matters.

[2] The promissory note was actually given to Bancorp's predecessor corporation, U.S. National Commercial Corp. We refer to both corporations as "Bancorp."

noted as a secured interest holder on the truck's title. Stadeli knew of Bancorp's interest in the truck.

The truck's original engine failed in 1981 and was removed. Because SP&C lacked the funds to repair the engine, the truck remained engineless and idle. Through its appraiser and Marvin Stadeli, Bancorp learned in 1982 that the truck was inoperable, but it did not attempt to enforce the security agreement requirement that the truck be kept "in good order and repair."

In early 1983 a large portion of SP&C's equipment was sold to meet payments owed to Bancorp. The sale left SP&C without an operating dump truck. Marvin Stadeli located an engine for the engineless truck and asked Stadeli to purchase it. He did so for $5,527.66, and the engine was installed in the truck. The truck operated with the replacement engine until November 1983.

After SP&C defaulted on its payments under the promissory note in July 1983, Marvin Stadeli informed Bancorp that the truck's engine belonged to Stadeli and that he would have to be compensated if Bancorp took possession of the truck. Bancorp's response was that the engine was subject to its security interest. Stadeli therefore had the engine removed in November 1983 and sold it for $8,000. Bancorp subsequently took possession of the again engineless truck, selling it in that condition for $8,500.

Bancorp contended at trial that its security interest in the truck extended to the engine under the common-law accession doctrine because the engine was an essential component of the truck. It characterized Stadeli's interest in the engine as an "unperfected security interest," which, under ORS 79.3140, was subordinate to its perfected security interest. Stadeli countered (1) that ORS 79.3140 was inapplicable because he had an ownership interest in the engine rather than a security interest and (2) that the engine was not an accession because it was readily removable without damage to the truck.

In its findings and conclusions, the circuit court did not clearly identify Stadeli's interest in the engine or state whether ORS 79.3140 was applicable. It found that the truck's original engine was replaced by one "owned by Defendant,

Otto Stadeli," but it also found that he "filed no Financing Statement of any interest in the replacement engine," which would imply that the court believed that he had only a security interest in the engine. In addition, Stadeli's retention of title in the engine would not necessarily establish that he did not have a security interest in the engine. *See* ORS 71.2010(37); ORS 79.2020. Nevertheless, the court concluded that the engine acceded to the truck and thereby became subject to Bancorp's security interest. The court further concluded that Stadeli's removal of the engine was a conversion and awarded Bancorp damages of $5,527.66.

The Court of Appeals affirmed *in banc* by a vote of 5-3. The majority, treating Stadeli's interest in the engine as if it were not a security interest, concluded that ORS 79.3140 was inapplicable. It held, however, that the engine acceded to the truck as a matter of law. In doing so, it rejected the "readily removable without damage" test for accession proposed by Stadeli in favor of the "functional" test urged by Bancorp. Under the "functional" test, "if the vehicle's 'usefulness' is destroyed by removal of the part," as it would be upon removal of an engine, "the part accedes to the vehicle on its installation." 81 Or App at 375. Noting that both tests had been adopted by courts in other states, the Court of Appeals gave the following reasons for its decision to adopt the "functional" test:

"We have two difficulties with [the 'readily removable without damage' test]. First, it is hard to imagine greater 'damage' to a truck than rendering it totally inoperable—the necessary consequence of taking out its engine. Second, treating this issue as one of fact creates the ludicrous possibility that an engine accedes or not, depending on how many bolts and hoses must be attached."

81 Or App at 376-77.

The dissenting judges believed that the "readily removable without damage" test was more appropriate because "[t]he doctrine of accession stems from the equitable notion that an owner of a chattel * * * [should not] obtain his chattel in a condition of less value or usefulness than before it was changed by a third party." 81 Or App at 378 (Young, J., dissenting) (quoting *Bank of America v. J. & S. Auto Repairs,* 143 Ariz 416, 422-23, 694 P2d 146 (1985)). Accordingly, they

would have remanded the case to the circuit court for further findings as to whether the engine was removable without damage.

## II.

The first issue we must decide is whether ORS 79.3140 (UCC § 9-314) or the common-law doctrine of accessions governs this case. ORS 79.3140(1)-(2) provides:

"(1) A security interest in goods which attaches before they are installed in or affixed to other goods takes priority as to the goods installed or affixed (called in this section 'accessions') over the claims of all persons to the whole * * *.

"(2) A security interest which attaches to goods after they become part of a whole is valid against all persons subsequently acquiring interests in the whole * * * but is invalid against any person with an interest in the whole at the time the security interest attaches to the goods who has not in writing consented to the security interest or disclaimed an interest in the goods as part of the whole."

ORS 79.3140, then, applies to this case only if Stadeli had only a security interest in the engine. The Court of Appeals approached this case as if he did not, but, for the reasons stated in Part I, we are not satisfied that the circuit court made such a finding. We will therefore analyze this case under both the statute and the common law.

## A.

By the terms of the security agreement, Bancorp's security interest in the dump truck extended to "any and all additions, attachments, and accessions thereto." Thus, if Stadeli had made a gift of the engine to SP&C, the engine would have become subject to Bancorp's security interest upon installation in the truck, and Stadeli's subsequent removal of the engine would have been a conversion. If the transfer of the engine to SP&C was intended as a sale, and if Stadeli retained only a security interest in the engine pending future payment, then the priority rules of ORS 79.3140 would have become applicable when the engine was "installed in or affixed to" the dump truck.

The critical event under ORS 79.3140 for determining the priority of security interests is the attachment of the

security interest in the goods installed or affixed. Unless there is an agreement to the contrary, a security interest "attaches" when:

"(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral * * *;

"(b) Value has been given; and

"(c) The debtor has rights in the collateral."

ORS 79.2030(1) (UCC § 9-203(1)).

The engine was not in the possession of Stadeli, and there was no signed writing giving him a security interest in the engine. Without a signed writing or possession, any security interest of Stadeli in the engine would never have attached. *See* ORS 79.2030(1)(a). Under ORS 79.3140(2), Bancorp's security interest would have become prior to Stadeli's upon the installation of the engine. Therefore, the removal of the engine by Stadeli would have been a conversion.

### B.

If Stadeli did not have a security interest in the engine, but instead owned it, Bancorp's security agreement with SP&C giving Bancorp a security interest in all "additions, attachments, and accessions" would not have been binding on Stadeli. A security agreement is effective only "between the parties, against purchasers of the collateral and against creditors." ORS 79.2010 (UCC § 9-201). In this circumstance, Bancorp could have obtained a security interest in the engine only if the engine acceded to the truck under the common-law doctrine of accession.

Neither the parties nor we have found a decision of this court deciding a question of accession; however, the doctrine is firmly established in the common law. Briefly stated, the common-law rule of accession is that "[w]hen the goods of two different owners are incorporated together, the title to the resulting product goes to the owner of the principal goods." Brown, The Law of Personal Property § 6.3, at 52 (Raushenbush 3d ed 1975). If the rule applies, and if the dump truck is considered the "principal goods," then Stadeli's engine

became the property of SP&C upon installation, and Bancorp acquired a security interest in the engine through the security agreement.

The common-law doctrine of accession was taken from Roman law by Bracton and was said by Blackstone to have been grounded on the right by occupancy. 2 Blackstone, Commentaries *404-05. Thus, the owner of a parchment acquired title to writings on the parchment, and the owner of a garment acquired title to embroidery on the garment. *See id.* at *404-07. The concept of title by occupancy precluded joint ownership of the combined substances, although in certain circumstances, for example, when a writer used the parchment of another by mistake, the person acquiring title to goods by accession would be required to compensate the former owner of the goods. *See* 2 Gaius, Institutes §§ 77-78; 2 Justinian, Institutes, title 1, §§ 26-34.

■ Accession did not occur through the mere physical attachment of goods. The incorporation of the goods had to be such that the component goods could not be recovered, as with ink and parchment in a writing, or could be recovered only at substantial economic cost, as with thread interwoven into a garment. *See* 2 Justinian, *supra,* title 1, §§ 26, 33. This principle of severability can also be seen in the related doctrines of specification and confusion. A specification is the application of labor to a thing or substance to create a new product. Because the labor is always inseparable from the new product, title to the whole of the new product is always in either the laborer or the owner of the original thing or substance, depending upon the nature of the transformation effected. *See* 2 Blackstone, *supra,* at *404. A confusion is the combination of similar substances or things into a uniform mass such that the identities of the original substances are lost, as when the grain of two separate owners is mixed together. Because the mass is practically infinitely divisible, there is no need to place title to the mass in a single person, absent some extraneous consideration such as the prevention of fraud. Thus, the owners of the original substances will own the mass in common in proportion to their respective shares. *Id.* at *405; *see also Ayre v. Hixson,* 53 Or 19, 98 P 515 (1908). Accession, then, is a doctrine that is meant to vest in a single person the ownership of products that are not, as a practical matter, severable into their component parts or shares.

In the United States, the severability limitation came to be a rule that "the principle of accession does not apply when the attached articles can be separated and removed from the principal thing without damage to the latter." Brown, *supra,* § 6.3, at 52. The leading case articulating this rule, *Clark v. Wells,* 45 Vt 4, 12 Am Rep 187 (1872), is factually somewhat similar to the present case. In *Clark* the plaintiff made a conditional sale of wheels and axles that he used to repair a wagon. The owner of the wagon on which the wheels and axles were installed subsequently sold the wagon with wheels and axles to the defendant before payment was completed on the wheels and axles. The court rejected the defendant's contention that the wheels and axles were accessions to the wagon, stating, "[The wheels and axles] could be followed, identified, severed, without detriment to the wagon, and appropriated to other use without loss." *Clark,* 12 Am Rep at 188.

These reasons for the inapplicability of the doctrine of accession are also present in this case. There is no question concerning the identity of the engine. There was uncontroverted testimony that the engine could be removed without damage to the dump truck and that, indeed, the truck was designed so as to facilitate removal. The truck body was just as capable of receiving a replacement engine after removal of Stadeli's engine as it was before the engine was installed. Moreover, given the relative ease with which a new engine could be installed, the aggregate value of the component parts was not substantially less than the whole. Thus, this is not a case like that of thread woven into a garment, in which the value of the component parts is substantially less than the value of the whole.

Of course, as the Court of Appeals' majority and other courts cited by it have noted, a truck without an engine is "damaged" in the sense that it is not functional. But this misplaces the focus of the inquiry. Under the rule articulated in *Clark,* the issue is not damage to the whole, but damage to the principal part. Even under a somewhat broader rule of practical severability, *i.e.,* severability that does not result in substantial economic loss, as with the unraveling of embroidery from a garment, the focus is still on the aggregate value of the parts rather than the functional value of the whole. Because the aggregate value of the truck and engine is not

substantially less than the value of the truck with the engine installed, the engine is severable.

Nevertheless, courts in certain circumstances ignore the severability principle in order to hold that a part is an accession. *See* Brown, *supra,* § 6.3, at 52-53. Accession in these instances turns less on the degree and form of attachment than on the circumstances of the attachment and the perceived equities of the case. *See id.*; O'Connell, Outline of the Law of Accession 18 (1957); *see also* Slater, *Accessio, Specificatio and Confusio: Three Skeletons in the Closet,* 37 Can B Rev 597 (1959). The doctrine thus becomes a vehicle for the application of various other distinct principles of law.

One such principle is that the law creates a presumption that a debtor's improvements to property in which there is a security interest are intended to benefit the secured party. *See* Brown, *supra,* § 6.3, at 53; O'Connell, *supra,* at 19. Perhaps the most commonly litigated circumstance in which this principle is operative is a security interest in a motor vehicle. Thus, where the owner of a vehicle subject to a security interest attaches the owner's own parts to the vehicle, the parts are usually deemed to be accessions to the vehicle and thereby subject to the security interest, particularly if the parts are functional necessities such as an engine or tires. *See* Brown, *supra,* § 6.3, at 53; O'Connell, *supra,* at 19-20; Guest, *Accession and Confusion in the Law of Hire-Purchase,* 27 Modern L Rev 505, 510-14 (1964) (citing numerous United States and Commonwealth decisions). The rationale for this result is that otherwise the secured party's interest would evaporate as parts failed and were replaced. Moreover, if the debtor is entitled to the surplus or obligated to pay the deficiency resulting from the repossession and sale of the goods, the debtor theoretically is neither harmed nor benefited by the conclusion that the added part is an accession. *See* Nickles, *Accessions and Accessories Under Pre-Code Law and U.C.C. Article 9,* 35 Ark L Rev 111, 123-24 (1981).

Where, however, the added part is owned by a third party, as in this case, or where a third party has a security interest in the part, under the common law courts ordinarily will not conclude that the part acceded to the vehicle unless it

is not severable.[3] *See* Brown, *supra,* § 6.3, at 53; O'Connell, *supra,* at 20-21; Guest, *supra,* at 510-14. The reason for this distinction is that, unlike the debtor, the third party has no obligation to maintain the secured party's security interest. Moreover, the third party has no debt to which the value of the part can be applied. A presumed contribution to Bancorp's security interest in the dump truck is not a reason for concluding that Stadeli's engine was an accession.

A more general principle that might motivate a court to conclude that a severable part was an accession would be the protection of persons who detrimentally rely on an apparent association of parts to the whole. Although there are no court decisions couched in these terms, the principle appears to be the source of ORS 79.3140(3)(a) and (c) (UCC § 9-314(3)(c)), which gives creditors with a prior perfected security interest in the whole priority over an attached security interest in a part to the extent of advances subsequent to the attachment. In this case, for example, if Bancorp had advanced to SP&C additional funds in the mistaken but reasonable belief that the replacement engine was owned by SP&C, this circumstance might be a basis for concluding that the engine was an accession subject to Bancorp's security interest, at least to the extent of the advances.

■ There was no evidence or contention, however, that Bancorp relied upon the installation of Stadeli's engine to its detriment. To the contrary, the installation of the engine was a windfall to Bancorp. Had Stadeli not purchased the engine, SP&C would have been without an operating dump truck and would have been in an even weaker position to meet its obligations to Bancorp. Bancorp now seeks an additional windfall by recovering the value of an engine that it never would have had without Stadeli's intervention.

By this we do not mean to imply that, where a part is severable from the whole, equitable and other principles should control whether the part accedes to the whole. These other principles are inapplicable to this case, so we have no occasion to decide that question. We hold only that, because the engine was readily severable from the truck, and because

---

[3] Where the third party holds a security interest in the part, UCC § 9-314 (ORS 79.3140) now controls.

there are no other circumstances that might warrant a conclusion that the engine was an accession, the engine did not accede to the truck.

Our holding that the engine did not accede to the truck requires reversal of the circuit court and the Court of Appeals. Nevertheless, because, as discussed above, the outcome of this case hinges upon whether Stadeli had only a security interest in the engine, and because the circuit court's findings were ambiguous in this respect, we must remand to the circuit court for additional findings.

The decisions of the circuit court and the Court of Appeals are reversed. The case is remanded to the circuit court for additional findings and further proceedings consistent with this opinion.