In re E. G. HOOVER CO., INC., E. G.
Hoover Co.—West, Debtor.

Edward W. HARKER, Trustee of the
Estate of E. G. Hoover Co.,
Inc., Plaintiff,

v.

DAUPHIN DEPOSIT BANK AND TRUST
CO., Fisher Dismonds Co., A Division of
Fisher Silversmiths, Inc., J. C. Keppie
Co., Collison Bros., Inc. and Gemco, De-
fendants.

Bankruptcy No. 1–80–00133.
Adv. No. 1–80–0194.

United States Bankruptcy Court,
M. D. Pennsylvania.

Jan. 14, 1982.

Edward W. Harker, Carlisle, Pa., for trus-
tee.

John Sullivan, Harrisburg, Pa., for Fisher, Keppie & GEMCO.

R. Stephen Shibla, Harrisburg, Pa., for Dauphin Deposit.

## MEMORANDUM AND ORDER DETERMINING ENTITLEMENT TO SALE PROCEEDS

THOMAS WOOD, Bankruptcy Judge.

The Dauphin Deposit Bank and Trust Company (the Bank), four consignors, and the trustee of the debtor's estate claim entitlement to share in the proceeds of the sale of the debtor's inventory and equipment. The Bank claims a security interest in the entire proceeds. The consignors claim a portion of the proceeds equal to the aggregate value of jewelry they sent or delivered to the debtor on consignment. The trustee contends that neither the Bank nor any consignor is entitled to prevail over the claim of the bankrupt estate.

The Bank's claim is dependent upon a determination that it effected perfection of the security interest provided in its agreement with the Debtor and that its interest covered the consignment merchandise. The consignors' claims are dependent upon proof that the debtor was generally known by its creditors to be substantially engaged in selling the goods of others. The trustee's claim is based upon the rights of a trustee as provided by the Bankruptcy Code.

### FACTS

The debtor formerly conducted business from two locations as two separate corporations. E. G. Hoover Co. (East store) operated a store located in Harrisburg, Pennsylvania and E. G. Hoover Co.—West (West store) operated a store located in Lemoyne, Pennsylvania. Prior to the closing of the Harrisburg store, but after the Bank had loaned money on two separate notes to E. G. Hoover Co.—West, the two corporate entities merged. The surviving corporation is E. G. Hoover, Co., Inc., debtor herein. Only the Lemoyne store was in operation at the time the petition in bankruptcy was filed.

On July 20, 1977, West borrowed $150,000 from the Bank on a promissory note in that amount, and executed a security agreement and financing statement in favor of the Bank. The financing statements were duly filed with the Secretary of the Commonwealth and the Prothonotary of Cumberland County, Pennsylvania, on July 27, 1977. The loan documents provided that the Bank's security interest would extend to inventory, equipment, fixtures, furnishings, accounts receivable, proceeds and all existing and future inventory, accounts receivable, and proceeds of the West store.

On August 14, 1979, the Bank advanced new money on a second note in the sum of $60,000. This transaction created some ambiguity as to the identity of the borrower, due to evident error in preparation of the note involved. The obligor was set forth as "E. G. Hoover Co." However, the address set forth was that of the West entity and other incidents of the transaction confirmed that the West store was the obligor.

The consignors delivered their jewelry to the debtor. With each delivery there was a memorandum as to terms of delivery. The jewelry was displayed on the debtor's premises in the same manner as jewelry purchased by the debtor for resale. Transactions with customers concerning the consigned jewelry did not vary from those concerning jewelry purchased for resale. The arrangement between the consignors and consignee called for return of the merchandise to the consignors on demand and imposed other obligations on the debtor, but these arrangements were not a matter of either constructive or actual notice either to customers or to creditors. In fact, according to the evidence, only other consignors knew of the debtor's consignment transactions.

There was no written or printed notice of the consignment practice on the premises, no notice thereof attached to the jewelry, and no mode of display or handling which was devised or which tended to bring attention to the fact that, as to some of the merchandise, there were restraints and conditions, which, if known, might inhibit transactions common to retail trade. Under the circumstances as they existed, the debtor routinely sold consignment merchandise and later notified the consignors by copies of the sales invoices. This procedure was evidently accepted and condoned by the

consignors as a commercially feasible incident of the consignment system. A reasonable inference would be that the consignors knowingly elected to do business in this manner rather than under the protective provisions of the Uniform Commercial Code of Pennsylvania first enacted in 1953. The four consignment creditors knew that the West store sold goods on memorandum or consignment, but the store was not generally known by its creditors to be substantially engaged in selling consignment goods.

The inventory and equipment of the debtors was sold by the trustee under a stipulation that the interests of the claimants in the proceeds amounting to approximately $263,000 would be determined later.

The above summary constitutes the findings of fact required by Rule 752 of the Rules of Bankruptcy Procedure.

## DISCUSSION

### The Consignors

· The Pennsylvania Commercial Code classifies a consignment or memorandum sale as a "sale or return...," and thus "the goods are delivered primarily for resale." 13 Pa.C.S.A. § 2326. Goods held on consignment are deemed to be on "sale or return" and as such are subject to the claims of the consignee's creditors unless the consignor provides protection by conforming to one of the following exceptions under 13 Pa.C.S.A. § 2326(c):

(1) complies with an applicable law providing for the interest of a consignor or the like to be evidenced by a sign;

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or

(3) complies with the filing provisions of Division 9 (relating to secured transactions).

The first and third exceptions are not in issue because the consignors did not file financing statements, nor did they display signs. The question is whether the debtor was generally known by its creditors to be substantially engaged in selling the goods of others.

■ We conclude that the facts do not support the consignors' claims to a portion of the sale proceeds. The four consignors knew that the debtor was substantially engaged in selling the goods of others, but they were the only creditors shown to have such knowledge, from among approximately 200 creditors. Both logic and precedent require that a larger proportion of creditors must have knowledge of a debtor's trade in consignment goods. *In re Novak*, 7 U.C.C. 196 (1969) (Knowledge of only two creditors is insufficient to apply the exception); *In re Webb*, 13 U.C.C. 394 (1973) (In a bankruptcy case, 15 out of 84 creditors was held to be insufficient); *Vonins Inc. v. Roff*, 5 U.C.C. 433 (1968) (Where 10 out of 60 creditors had knowledge the exception did not apply). Four out of approximately 200 creditors are insufficient to prove that a substantial number of the debtor's creditors knew that the debtor was selling the goods of others. Also, it is significant that these four creditors knew of the debtor's practice because they were participants in the practice. Also, the evidence presented does not support an inference that the Bank knew or should have known that the debtor's inventory was partially comprised of consignment goods. We conclude that, because the consignment creditors failed to protect their interests in accordance with the Uniform Commercial Code of Pennsylvania they have no entitlement to the sale proceeds or any part thereof.

### The Secured Party

The trustee argues that the Bank failed to establish its security interest and therefore cannot have a perfected security interest for two reasons. *First*, the trustee contends that the note for the new money of $60,000 was not a debt of the West store because the note appears to be an obligation of E.G. Hoover Co., a separate corporate entity operating the East store. *Second*, the trustee argues that the debtor never had rights in the consignment goods to which a security interest could attach.

438

### 1. *Identity of Borrower*

■ The $60,000 note is unclear as to the identity of the obligor, since the designation is not the same as that of either the East store or the West store. This ambiguity is insignificant because the note further identifies the debtor by reciting the address of the West store. Also, the other incidents of the transaction support an inference that the West store was the intended obligor on the note.

### 2. *Interest of Debtor in Consigned Merchandise*

■ The trustee's second and more cogent argument is that the debtor's interest in the consigned goods was not such that it could be pledged as security for the loan. The law is otherwise.

Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." 13 Pa.C.S.A. § 2326(c).

As goods on "sale or return" the consignment goods were subject to the claims of creditors while in possession of the consignee. 13 Pa.C.S.A. § 2326(b). Thus the debtors had an interest which was subject to pledge as loan collateral.

Debtor also had an additional interest in the merchandise; it was rightfully in its possession, and, as an essential feature of the possessory right, the debtor had undertaken the risk of loss. It has been held that such possessory rights constitute a sufficient property interest to support an encumbrance. *Uniroyal, Inc. v. Michigan Bank N.A.*, 12 U.C.C. 745 (Ninth Cir.Ct. 1972) (rights of use, control and possession sufficient to constitute rights in collateral);

*Douglas—Guardian Warehouse Corp. v. Esslair Endsley Co.*, 10 U.C.C. 176 (W.D.Mich. 1971) (debtor had right to sell and an assumed duty to preserve the goods).

We conclude that the debtor had an interest in the consigned jewelry that could be pledged as security for its loan. Furthermore, we conclude that the Bank had a valid perfected security interest which extended to the consigned merchandise, and which was collateral for both the $150,000 obligation and the $60,000 obligation of the debtor.

### *The Trustee*

■ Under section 544(a) of the Bankruptcy Code, the trustee in bankruptcy is a hypothetical judicial lien creditor with the power to prevail over the claims of creditors holding unperfected security interests, but not over claims of creditors with perfected security interests. Moreover, the definition of "lien creditor" under the Uniform Commercial Code of Pennsylvania includes the trustee in bankruptcy from the date of the filing of the petition.

The powers granted a lien creditor under Pennsylvania law inure to the benefit of the trustee in bankruptcy. 13 Pa.C.S.A. § 9301(c). Under the Bankruptcy Code, unperfected security interests are subordinate to the rights of the trustee as a lien creditor. Therefore the trustee is entitled to prevail over the consignors who have no entitlement to the sale proceeds or any part thereof because they failed to protect their interest in the consignment goods in accordance with 13 Pa.C.S.A. § 2326. The Bank as a secured creditor, however, prevails over the trustee as to the consignment goods. The trustee is entitled to whatever remains of the proceeds of the sale after the Bank's interest has been satisfied.

### CONCLUSIONS OF LAW

1. The Bank had a perfected security interest in the property sold by the trustee.

2. The claims of the consignors to the sale proceeds are subordinate to the claim of the Bank and to the claim of the trustee.

3. The Bank's secured claim includes the balances of principal payable under the two loan transactions, together with interest due thereon.

4. The trustee is entitled to any sale proceeds remaining after payment of the secured claim of the Bank.

### ORDER

AND NOW, this 14 day of January, 1982, IT IS ORDERED that the trustee make payment to the Dauphin Deposit Bank and Trust Company in accordance herewith.