On certified questions from the United States Court of Appeals for the Ninth Circuit
Order dated July 12; certification accepted August 14, 1990, certified questions
answered April 23, 1992

## BELMONT INTERNATIONAL, INC.
*Plaintiff-Appellant,*

*v.*

## AMERICAN INTERNATIONAL
## SHOE COMPANY,
First Interstate Bank of Oregon, N.A.,
and Richard Wurth,
*Defendants-Appellees.*

## (USDC CV-88-537-RE; USCA 88-4460; SC S37322)
831 P2d 15

I. Franklin Hunsaker, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, argued the cause and filed the briefs for plaintiff-appellant. With him on the briefs were Thomas A. Gordon and Randy L. Arthur, Portland.

Lee C. Nusich, Portland, argued the cause for defendant-appellee First Interstate Bank of Oregon, N.A. Jeffrey M. Batchelor, of Lane Powell Spears Lubersky, Portland, filed the brief.

GILLETTE, J.

## GILLETTE, J.

This case is before this court on certification from the United States Court of Appeals for the Ninth Circuit pursuant to ORS 28.200 to 28.255.[1] *See Western Helicopter v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991) (setting out and explaining the certification process). The five questions certified are:

"1. Does ORS 72.3260 apply to money collected 'on open account' from customers of the consignee?

"2. Does ORS 79.3015 apply to money collected 'on open account' from customers of the consignee?

"3. Assuming that either ORS 72.3260 or ORS 79.3015 applies, would a consignor, who did not file or otherwise protect itself under those sections, have priority in the proceeds of a consignment sale over a secured creditor with actual knowledge of the consignment?

"4. Assuming that neither ORS 72.3260 nor ORS 79.3015 applies, would a perfected secured creditor's priority pursuant to ORS 79.2010 and/or ORS 79.3010 preempt a common law claim for money had and received?

"5. Assuming that such a claim has not been preempted, has [consignor] stated a claim for money had and received?"

As the stated questions imply, this is a claim for money had and received. In its complaint, plaintiff Belmont International, Inc. (Belmont), alleged that it consigned shoes to defendant American International Shoe Co. (American) for sale to American's customers. All proceeds from American's sale of the consigned shoes were deposited in and handled through a separate account[2] that American established at

---

[1] ORS 28.200 provides:

"The [Oregon] Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state."

[2] The parties call this arrangement an "open account." It might better be called a "segregated account containing proceeds from the sale of consigned goods." "Open

defendant First Interstate Bank of Oregon (Bank).[3] Bank is a creditor of American and has a perfected security interest in all of American's accounts including, Bank argues, the account containing the proceeds from the sale of the consigned shoes.

American defaulted on a loan and security agreement with Bank, and Bank applied all of American's accounts, including the account at issue here, to the outstanding loan. Both Belmont and Bank asserted priority in American's account containing the proceeds of the consignment sales. Belmont filed this case against Bank in the United States District Court for the District of Oregon, asserting claims for money had and received and for negligence. On Bank's motion, the district court dismissed the action, holding that Belmont had failed to state a claim. The district court ruled that the dispute was governed by Article 9 of the Uniform Commercial Code (UCC), ORS chapter 79, and that Belmont's rights were inferior to those of Bank under the pertinent provisions of the UCC. Belmont appealed to the United States Court of Appeals for the Ninth Circuit.[4] The Ninth Circuit certified five questions of law to this court, and we accepted certification.

### 1. Does ORS 72.3260 apply to money collected "on open account" from customers of the consignee?

The answer is "no."

ORS 72.3260, as pertinent to this proceeding, provides:

"(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

---

account" is a term of art: An "open account" is one in which there have been ongoing dealings between the parties and the account is kept open in anticipation of future transactions. *See generally Purvis v. Kroner*, 18 Or 414, 416, 23 P 260 (1890) (discussing concept).

[3] Belmont's complaint mentions two accounts, a "separate account" and an "open account." During oral argument, Belmont stated that the difference between these two accounts is not pertinent to this case. We assume, therefore, that the account at issue in the present case is the bank account established by American that contains the proceeds from the sale of the consigned shoes.

[4] Only the claim for money had and received is involved in this appeal.

"(a)   A 'sale on approval' if the goods are delivered primarily for use; and

"(b)   A 'sale or return' if the goods are delivered primarily for resale.

"(2)   Except as provided in subsection (3) of this section, goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

"(3)   Where goods are delivered to a person for sale and such person maintains a place of business at which the person deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this subsection is not applicable if the person making delivery:

"(a)   Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; or

"(b)   Establishes that the person conducting the business is generally known by the creditors of the person to be substantially engaged in selling the goods of others; or

"(c)   Complies with the filing provisions of ORS 79.1010 to 79.5070 on secured transactions."

The interesting thing about this first question is that both parties agree on the answer: ORS 72.3260 *cannot* apply to a dispute between Belmont and Bank over an account that contains proceeds from the sale of consigned goods, because the focus of that statute is on "goods," not on money that may be derived from the sale of those goods. This is a reasonable construction. The legislature has demonstrated elsewhere that it knows how, within the UCC, to deal with proceeds from the sale of goods on consignment. *See* ORS 79.3015, discussed *post*. The fact that ORS 72.3260 does not, by its terms, apply to the situation before us does not mean, however, that the language of the statute cannot inform our judgment as to what the policy of the law *should be* in such circumstances. We believe that an explanation of this point now will facilitate our answer to later questions.

We assume, for the purposes of this case, that the relationship between Belmont and American was a true consignment. This means that, under normal circumstances, "the absolute ownership of the property is in the consignor, [and] absent a basis to apply an estoppel (including apparent or ostensible ownership), the consignee has no interest that can be transferred to his creditors or trustee in bankruptcy." *Manger v. Davis*, 619 P2d 687, 691 (Utah 1980). The effect of ORS 72.3260(3) is to modify this general rule where the consigned goods are delivered to a person for sale and such person is in the business of selling goods of that kind. Under such circumstances, and with respect to the creditors of the consignee, "the goods [delivered on consignment] are deemed to be on sale or return." ORS 72.3260(3). For the purposes of this case, American was such a "person." Therefore, the goods consigned to American by Belmont were "deemed to be on sale or return."

The phrase, "the goods [delivered on consignment] are deemed to be on sale or return," means that, for the purposes of the consignee's creditors, the consignee is deemed to have title in the consigned goods. *See In re Miller*, 119 BR 660 (WD Ark 1990) (so holding); *Fuller v. Texas Western Financial Corp.*, 635 SW2d 787, 789 (Tex App), *aff'd* 644 SW2d 442 (Tex 1982) (same); Annot., *Consignment Transactions Under the Uniform Commercial Code*, 40 ALR3d 1078, 1088, § 3(b) (1971)(discussing principle).

Even under such circumstances, however, the consignor is not without protection. Under ORS 72.3260(3)(a) to (c), the consignor can escape the rule of ORS 72.3260(3) if it can show either (a) that it has complied with an applicable law providing for a consignor's interest to be evidenced by a sign, or (b) that the person conducting the business generally is known by the person's creditors to be engaged substantially in selling the goods of others, or (c) that the consignor has made an appropriate filing pursuant to the secured transaction provisions of the UCC.

Belmont concedes that its allegations in the present case do not suggest compliance with the requirements of either subsections (a) or (c) of ORS 72.3260(3). Belmont argues, however, that it has alleged facts that, if proved,

would bring it within subsection (b) of that statute.[5] We agree. Paragraph 7 of Belmont's complaint in the district court alleged:

> "At all material times, [Bank] was aware of the business relationship between [Belmont] and * * * American * * * and had actual knowledge that American * * * was substantially engaged in selling the goods of [Belmont]."[6]

Even though Belmont did not allege that American was generally known by its creditors to be engaged in selling goods of others, an allegation that the creditor making the claim had such knowledge was sufficient to invoke the exception found in ORS 72.3260(3)(b).

Bank argues that the allegation is insufficient because it does not assert that American's creditors *generally* knew that American was engaged in selling the goods of others. Belmont responds that such a reading of ORS 72.3260(3)(b) is too narrow, given the purpose that the exception was intended to serve. Belmont asserts that, "where a secured creditor has received actual prior notice that a consignee is substantially engaged in selling consigned goods, the consignor is entitled to superior rights." Belmont explains that construing ORS 72.3260(3)(b) to constitute an "actual knowledge" exception is reasonable, because "creditors with actual knowledge of the consignment relationship simply do not need the protection that the UCC provides to creditors of consignees that do not have such knowledge."

It is true that, as Bank argues, ORS 72.3260(3)(b) states that the consignee must be *generally known by the creditors* of the person to be substantially engaged in selling the goods of others." (Emphasis supplied.) Several courts

---

[5] *See General Elec. Credit Corp. v. Strickland Div.*, 437 So 2d 1240, 1245 (Ala 1983) (stating that the consignor has the burden of proving that the consignee is "generally known by the creditors of the [consignee] to be substantially engaged in selling the goods of others").

[6] Although we need not decide the issue this way in order to dispose of this case, we note that some courts would hold that a consignor's rights in the proceeds of a consignment sale are the same as its rights in the consigned goods. *See In re E.G. Hoover Co., Inc.*, 16 BR 435, 438 (BC MD Pa 1982) (holding that whatever interest a consignor had in consignment goods under UCC 2-326 follows to the proceeds of the consignment sale); *Sterling Boat Co. v. Arizona Marine, Inc.*, 134 Ariz 55, 653 P2d 703 (Ariz Ct App 1982) (holding that ownership rights in consignment goods become ownership rights in the proceeds from the sale of the consignment goods).

have interpreted that phrase to require an awareness by most of the consignee's creditors of the consignee's involvement in one or more consignment relationships. *See, e.g., In re BRI Corp.*, 88 BR 71, 75 (BC ED Pa 1988); *In re Castle Tire Center, Inc.*, 56 BR 180, 183 (BC WD Pa 1986); *In re Wicaco Mach. Co., Inc.*, 37 BR 463, 466 (BC ED Pa 1984), *aff'd without opinion* 770 F2d 1074 (3d Cir 1985); *In re E.G. Hoover Co., Inc.*, 16 BR 435, 437 (BC MD Pa 1982). We think, however, that these courts place undue emphasis on the "s" — creditors — in the statute and thereby negate the policy behind UCC § 2-326.[7]

The Oregon legislature adopted UCC § 2-326 as ORS 72.3260. Or Laws 1961, ch 726, § 72.3260. The purpose of UCC § 2-326 is to protect the creditors of a consignee from the consignor's hidden liens on the consignment goods. *Walter E. Heller & Co. Southwest v. Riviana Foods, Inc.*, 648 F2d 1059, 1062 (5th Cir 1981); *Cantor v. Anderson*, 639 F Supp 364, 369 (SD NY), *aff'd* 833 F2d 1002 (2d Cir 1986); *In re Key Book Service, Inc.*, 103 BR 39, 43 (BC D Conn 1989). The Official Comment to UCC § 2-326 states that "[t]he purpose of the exception [to UCC § 2-326(3)] is merely to limit the effect of the present subsection itself * * * to cases in which creditors of the [consignee] * * * may reasonably be deemed to have been misled by the secret reservation."[8] Some courts have held that a creditor's actual knowledge of the consignment relationship is a sufficient showing of the requirements of UCC § 2-326(3)(b) as against that creditor. *See, e.g., GBS Meat Industry Pty. LTD. v. Kress-Dobkin Co.*, 474 F Supp 1357, 1362-63 (WD Pa 1979) *aff'd* 622 F2d 578 (3rd Cir 1980); *First Nat. Bank of Blooming Prairie v. Olsen*, 403 NW2d 661, 665 (Minn App 1987). The assumption is that, "[w]here a secured creditor has knowledge of consignments, he will certainly not advance funds to the consignee based on

---

[7] ORS 71.1020(5)(a) provides that, in the UCC, unless the context otherwise requires, "[w]ords in the singular number include the plural, and in the plural include the singular."

[8] 

"Although the Official Comments lack the force of law, they are instructive, because the legislature took note of them at the time of adoption, because they are consistent with the structure of the UCC, * * * and because the purpose of the Official Comments is to promote uniform construction of the UCC." *U.S. National Bank v. Boge*, 311 Or 550, 563, 814 P2d 1082 (1991).

the consignee's possession of the consigned property." *In re State Street Auto Sales, Ind.*, 81 BR 215, 219 (BC D Mass 1988).

■       We agree with Belmont's analysis of the purpose of the statute and its exceptions, and with the foregoing cases that are consistent with this interpretation of ORS 72.3260(3)(b). In a dispute between a consignor and a creditor of the consignee as to priority in the consigned goods, proof that the creditor actually knew of the consignment before becoming a creditor is sufficient to meet the requirements of ORS 72.3260(3)(b). For the purposes of the present case, this means that Bank, if its allegations are proven, could not have taken a security interest in the goods that Belmont had consigned to American which would be superior to Belmont's own interest in the goods. Bank's position in this case is that it nonetheless is entitled to assert a priority security interest in the *proceeds* of sales that it knew to be consignment sales, even though it knew that the proceeds were not the property of the debtor.

### 2.   Does ORS 79.3015 apply to money collected "on open account" from customers of the consignee?

■       The answer is "no."

ORS 79.3015 provides:

"(1)   A person who delivers goods under a consignment which is not a security interest and who would be required to file by ORS 72.3260(3)(c) has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer, if:

"(a)   The consignor complies with the filing provision with respect to consignments of ORS 72.3260(3)(c) before the consignee receives possession of the goods; and

"(b)   The consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

"(c)   The holder of the security interest receives the notification within five years before the consignee receives possession of the goods; and

"(d)   The notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

"(2)   In the case of a consignment which is not a security interest and in which the requirements of subsection (1) of this section have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor."

Belmont argues that ORS 79.3015 has no application to this case. We agree.

The Oregon legislature adopted UCC § 9-114 as ORS 79.3015.[9] The Official Comment to UCC § 9-114 states that, "[e]xcept in the limited cases of identifiable cash proceeds received on or before delivery of the goods to the buyer, no attempt has been made to provide rules as to perfection of a claim to proceeds of consignments * * * or the priority thereof." In this case, the proceeds of the consignment sales were acquired by American after the shoes were delivered to the buyers — the customers of American. By the clear terms of the statute and the consistent expression of the Official Comment to UCC § 9-114, ORS 79.3015 does not apply to this case.

**3.   Assuming that either ORS 72.3260 or ORS 79.3015 applies, would a consignor, who did not file or otherwise protect itself under those sections, have priority in the proceeds of a consignment sale over a secured creditor with actual knowledge of the consignment?**

The premise for this question is absent. As we have explained, neither statute applies. As we also have explained, however, even if ORS 72.3260 did apply, it would not have the effect of foreclosing Belmont's claim to the proceeds of the sale of its consigned goods because, according to the allegations of Belmont's complaint, Bank knew that the money in the segregated account at issue here did not belong to American.

---

[9] The bill that enacted ORS 79.3015, Senate Bill 143 (1973 regular session), does not state in so many words that it adopts UCC § 9-114. However, the language is identical, and the legislative history of SB 143 indicates such an adoption.

**4. Assuming that neither ORS 72.3260 nor ORS 79.3015 applies, would a perfected secured creditor's priority pursuant to ORS 79.2010 and/or ORS 79.3010 preempt a common law claim for money had and received?**

■ The answer is that, as we understand the present posture of this case, the question does not follow the facts of the case.

ORS 79.2010 provides, in part:

> "Except as otherwise provided by the Uniform Commercial Code a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

ORS 79.3010(1)(a) provides:

> "Except as otherwise provided in subsection (2) of this section, an unperfected security interest is subordinate to the rights of:
>
> "(a)  Persons entitled to priority under ORS 79.3120."

"Persons entitled to priority under ORS 79.3120" include persons whose rights are established by ORS 79.3015, discussed *infra*. ORS 79.3120(1). As we have demonstrated, ORS 79.3015 does not apply here. It follows that, if the terms of both ORS 79.2010 and 79.3010(1) are applicable to the facts of this case, Belmont's interest in its consigned goods is subordinate to Bank's security interest in the segregated account, unless some exception to this rule, express or implied, is applicable.

Our difficulty with the question posed, however, is that, under the facts as presently alleged, it does not appear that ORS 79.2010 and 79.3010(1) apply. The "collateral" in this case is a segregated account in Bank's possession that, Belmont alleges, Bank knows never belonged to American. "Collateral" is defined as "property subject to a security interest." ORS 79.1050(1)(c). The UCC expressly requires that a debtor must have "rights in the collateral" in order for a security interest to attach. ORS 79.2030(1)(c).[10] If Belmont

---

[10] ORS 79.2030(1) provides:

"Subject to the provisions of [other parts of the UCC not relevant to these proceedings], a security interest is not enforceable against the debtor or third

is able to prove the knowledge on behalf of Bank that it has alleged, we would hold that Bank could not have a security interest in the segregated account as against Belmont, because it knew that American simply was holding the proceeds for Belmont and that Belmont, not American, was the only party with rights in the disputed collateral. *See Bancorp Leasing v. Stadeli Pump*, 303 Or 545, 551, 739 P2d 548 (1987) (where a third party owns a chattel, creditor does not acquire a security interest in the chattel merely because it has a security interest in the item to which the chattel is attached).

**5. Assuming that such a claim has not been preempted, has Belmont stated a claim for money had and received?[11]**

The answer is "yes."

■ Belmont argues that, because Bank is not entitled under the UCC to the consignment sales proceeds in the segregated account, Bank may be required under the theory of money had and received to transfer the proceeds to Belmont. Bank responds that it did not appropriate the consignment sales proceeds knowing that the proceeds rightfully belonged to Belmont. It contends that, unless Belmont can show that Bank was "wrongful" in its acquisition of the proceeds, Belmont's claim for money had and received fails.

We hold that Belmont has asserted adequately a claim for money had and received. Money had and received, or "the common count of general assumpsit," is an action at law but is governed by equitable principles. *Albino v. Albino*, 279 Or 537, 553, 568 P2d 1344 (1977). *Accord Rosenblum v. First State Bank of Elgin*, 283 Or 123, 131 n 1, 581 P2d 515 (1978);

---

parties with respect to the collateral and does not attach unless:

"(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral * * *;

"(b) Value has been given; and

"(c) *The debtor has rights in the collateral.*"

[11] Because no provision of the UCC is applicable, it is not necessary for us to make a determination under ORS 71.1030. *See U.S. National Bank v. Boge, supra* note 8 (describing process for determining whether UCC has preempted common law).

*Golden v. Golden*, 273 Or 506, 511 n 8, 541 P2d 1397 (1975); *Smith v. Rubel*, 140 Or 422, 426, 13 P2d 1078 (1932). "The action is liberal in form and greatly favored by the courts." *Albino v. Albino, supra*, 279 Or at 553 (citing *Smith v. Rubel, supra*, 140 Or at 427). "The generally accepted test which determines whether a recovery [for money had and received may be obtained] * * * is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim." *Smith v. Rubel, supra*, 140 Or at 426.

In this case, Bank foreclosed on American's accounts pursuant to its security agreement with American. Included in those accounts, however, was one — the segregated consignment sales account — in which Bank may have had no security interest. If Belmont shows that Bank had no security interest, it follows that Bank holds the proceeds, which belong to Belmont, without lawful or contractual authority. Bank will be unjustly enriched, with respect to Belmont, if it is permitted to retain the proceeds. Belmont has alleged as much.

Certified questions answered.